IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ABDEE SHARIFAN on behalf of himself and for all others similarly situated, | § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | CIVIL ACTION NO. _____ |
| NEOGENIS LABS, INC. D/B/A HUMANN, | § § § § | |
| *Defendant.* | § § | |

## **PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Abdee Sharifan, on behalf of himself and for all other members of the class herein, Plaintiffs herein, and files this Original Class Action Complaint against Neogenis Labs, Inc. d/b/a HumanN ("HumanN") Defendant herein, and in support thereof, show the Court the following:

### **PARTIES AND SERVICE**

1. Plaintiff Abdee Sharifan is an individual and a citizen of the State of Texas and resides in Harris County, Texas.

2. Defendant, Neogenis Labs, Inc. d/b/a HumanN is a Texas Company that markets products all over the country in the emerging nitric oxide supplementation and nutritional market. Neogenis Labs, Inc. d/b/a HumanN may be served with process by serving its registered agent, Joel J. Kocher, 1122 South Capital of Texas Hwy., Suite 300, Austin, Texas, 78746. Issuance of summons is requested at this time.

## VENUE

3.      Venue is proper in the Southern District of Texas under 28 U.S.C. § 1391(b)(2) because the named plaintiff resides within it, a substantial part of the events or omissions giving rise to the claim occurred within this district, and Defendant caused harm to class members residing in this district.

## JURISDICTION

4.      Jurisdiction is proper pursuant to the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1332, et. seq., because the amount in controversy for the proposed class(es) is greater than $5,000,000 and is a class action in which members of the class of plaintiffs are citizens of a State different from Defendant. Defendant sells the improperly labeled and marketed products all over the country and most of the class members are outside of Texas.

## CLASS ACTION ALLEGATIONS

5.      Plaintiff Abdee Sharifan, on behalf of himself and for all other members of the class herein, brings this lawsuit on behalf of himself and the proposed Class under Federal Rule of Civil Procedure 23 and any other applicable Federal or State laws or rules of civil procedure. In addition to all recoverable damages for Class Members, this action seeks recovery of attorneys' fees, and any and all other damages, in law or in equity, arising from Defendant's actions.

6.      The proposed Class definition is as follows:

> All persons or entities who purchased HumanN's deceptively labeled and marketed "Superbeets" products for purposes other than resale or distribution during the Class period.

7.      The Class Period dates back four (4) years (or the length of the longest applicable statute of limitations for any claim asserted) from the date this action was commenced and continues through the present and the date of judgment. Any causes of action with a two (2) year statute of limitations period are tolled by the Discovery Rule.

8. This Class is so numerous that joinder of all members of the Class is impracticable. Fed. R. Civ. P. 23(a)(1). The precise number of the Class is believed to exceed 1,000,000 people. The precise number of members in the Class and their identities and addresses may be easily ascertained from publication or public notice.

9. The proposed Class is ascertainable. The litigation of the questions of fact and law involved in this action will resolve the rights of all members of the Class and hence will have binding effect on all Class Members. These Class Members can be readily identified from Defendants' records, public records, published notice, and other means readily available to Defendants, and thus the Plaintiffs, through minimally intrusive discovery.

10. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. These common questions of law and fact exist as to all members of the class and predominate over the questions affecting only individual members of the class. Fed. R. Civ. P. 23(a)(2). These common legal and factual questions include, without limitation, whether the class members purchased products falsely marketed by HumanN as containing Superbeets and activating nitric oxide.

11. The claims of Plaintiff are typical of the claims of all the Class Members. Fed. R. Civ. P. 23(a)(3). Plaintiff and all Class Members purchased Superbeets products manufactured, marketed, and distributed by Defendant HumanN.

12. Plaintiff will fairly and adequately represent and protect the interests of the proposed Class. Fed. R. Civ. P. 23(a)(4). Plaintiff does not have any interests that are antagonistic to those of the proposed Class. Plaintiff has retained counsel competent and experienced in the prosecution of this type of litigation.

13. The proposed Class has a well-defined community of interest in the questions of fact and law to be litigated. The common questions of law and fact predominate with respect to

the liability issues, relief issues and anticipated affirmative defenses. The named Plaintiff has claims typical of the class members. Without limitation, as a result of Defendant's deceptive conduct alleged herein, Plaintiff and all Class Members purchased Superbeets products from Defendant.

14. A class action is the superior method for fair and just adjudication of this controversy. The expense and burden of individual suits makes it impossible and impracticable for members of the proposed Class to prosecute their claims individually. Class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings. Individualized litigation increases the delay and expense to all parties and the court system presented by the complex legal and factual issues of the case. By contrast, class adjudication presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## **FACTS**

15. HumanN was started in 2009 based on Nathan Bryan's patented nitric oxide technology licensed out of the University of Texas Health Science Center at Houston. HumanN launched with a nitric oxide lozenge in Aug of 2010. At the time, there was very little awareness or market demand for nitric oxide products or supplements.

16. During the 2012 London Olympic games, many athletes were drinking beet root juice to improve their nitric oxide production and to enhance performance. Nathan Bryan and HumanN began researching the use of beets as a vehicle to deliver HumanN's patented nitric oxide science. HumanN worked with suppliers of beets to developed a specific fermentation process which allowed the use of the beet to deliver HumanN's patented composition of matter containing both nitrite and nitrate to deliver nitric oxide. HumanN created a process that delivered a specific amount of nitrite that, based on published clinical trials, would enhance performance.

17. HumanN tested dozens of beets and beet root products and determined that around 90% of them did not contain any nitric oxide activity. Nathan Bryan spent weeks in the laboratory of Florida Food Products helping to develop a fermentation process that would concentrate nitrite in the beet product and maintain sufficient nitrate to enhance nitric oxide production. Nathan Bryan and HumanN developed BeetElite which were made using a specific beet root product and a specific formula that enhanced nitric oxide production.

18. In 2013, HumanN launched Beet Elite a product developed by Nathan Bryan containing the so called "superbeets" which contained specific amounts of nitrite and nitrate. HumanN launched Beet Elite in the sports performance market. After achieving some success in the sports performance market, HumanN then created Superbeets. Superbeets was the same exact formula as Beet Elite except it contained a 5-gram dose instead of 10-gram dose. Superbeets contained superbeets and was made for normal consumers and targeted a much larger audience.

19. To market Superbeets, HumanN led with a very strong nitric oxide message. HumanN heavily marketed the fact that Superbeets used a special fermentation process to preserve nitric oxide activity. To support this marketing, HumanN conducted clinical trials and tested Superbeets against other products. These clinical trials demonstrated Superbeets' superiority over every other beet product on the market. HumanN advertised these clinical trials and marketed Superbeets as containing superbeets and enhancing nitric oxide production.

20. Superbeets gained popularity due to the use of the superbeets and the fact that consumers wanted the benefits of enhanced nitric oxide production in their bodies. HumanN even filmed an infomercial describing the nitric oxide activity of beets and how these performance enhancing vegetables could increase nitric oxide production. Studies show that nitric oxide supplements lower blood pressure, decrease muscle soreness, and boost exercise performance. Nitric oxide supplements are also shown to help men with erectile disfunction. Knowing these

benefits, HumanN heavily marketed Superbeets as a product that enhances nitric oxide production in the body.

21. For several years, HumanN made the decision to not pay royalties to the University of Texas Health Science Center at Houston even though the Superbeet and Beet Elite products were covered under the license agreement. Eventually, the University of Texas Health Science Center at Houston demanded payment because HumanN was in violation of the license agreement. Eventually, HumanN agreed to pay the University of Texas Health Science Center at Houston a substantial sum of money in back royalties.

22. To avoid paying any additional royalties, HumanN created a new line of "Superbeet" products that did not contain superbeets or the patented nitric oxide technology. Despite the fact that these new products did not contain superbeets and did not enhance nitric oxide in the body, they were named and marketed as if they contained Superbeets and as if they enhanced nitric oxide. HumanN's new products were named Superbeets Energy, Superbeets Immune, and Superbeets Collagen. HumanN named these products, and then marketed these products, as if they contained the exact same formula at the original Superbeets. They did not. Most recently, HumanN has launched Superbeet Heart chews and Superbeet Memory and Focus.

23. Instead, HumanN's new products used a cheap beet that did not contain any detectable amounts of nitrite or nitrate. HumanN knew these products do not contain Superbeets and do not have any detectable amounts of nitrite or nitrate. Despite knowing this, HumanN marketed these products as if they contained Superbeets and improved nitric oxide production once consumed. HumanN even falsely claimed these new products "activate nitric oxide" when they actually contain no nitric oxide and do not activate nitric oxide.

24. HumanN markets the new products as if they contained the exact same superbeets and used the exact same nitric oxide boosting formula as the original Superbeets:




25. Not only does HumanN falsely and deceptively market these new products, when asked if these new products contain the same formula, HumanN tells consumers these new products are identical to the original Superbeets formula. For example, HumanN's official social media marketing made the following false claims to consumers:



7

26. When consumers reach out to HumanN on its official FaceBook page, they are falsely told that these new products contain the exact same formula as the original Superbeets:



27. HumanN was notified by consumers and people within the company that HumanN was deceptively marketing the new superbeets products and HumanN refused to change its labeling. HumanN also took no action to revise its deceptive marketing. Instead, HumanN's executives made the decision to continue selling these products which misrepresented their ingredients and misrepresented their benefits.

28. HumanN received many complaints on the new products because buyers thought they were getting nitric oxide and superbeets with the added benefits of energy, immune boost, and collagen. HumanN also received complaints from consumers who were using Superbeets to help control their blood pressure and the new superbeets product did not help with blood pressure because the new products lacked nitric oxide. One customer even complained because she ended up in the hospital due to her blood pressure.

29. HumanN continues to improperly sell, label, and market its products as containing superbeets and enhancing nitric oxide production.

## CAUSES OF ACTION

30. Plaintiffs re-allege each and every allegation contained in this Petition as though fully set forth herein.

### First Cause of Action –DTPA Violations

31. The transactions and occurrences outlined above constitute violations of the Deceptive Trade Practices—Consumer Protection Act ("DTPA"). Defendant's actions violate numerous provisions of Section 17.46 of the Texas Business & Commerce Code. For example, Section 17.46 b (24) "failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed" constitutes a false, misleading, or deceptive act under the DTPA.

*See* Tex. Bus. & Com. Code Ann. § 17.46 b (24). Defendant failed to disclose information regarding the fact that the new superbeets products did not contain Superbeets and did not enhance nitric oxide production. Defendant falsely advertised its products.

32. As a consequence of Defendant's acts and omissions, Plaintiff and all Class Members are entitled to recover economic damages. Moreover, Defendant acted knowingly and intentionally, as those terms are used in Section 17.50(b)(1) of the DTPA. As a consequence of Defendant's knowing and intentional acts and omissions, Plaintiff and all Class Members are also entitled to recover their reasonable and necessary attorneys' fees and costs incurred in prosecuting their claims against Defendants.

33. Defendant engaged in unfair, unconscionable, deceptive, or fraudulent acts or practices in violation of the of all state's deceptive trade practices statutes including, but not limited to, the following:

    a. Alaska Stat. 45-50-471 et seq.

    b. Ariz. Rev. Stat. § 44-1521 et seq.

    c. Arkansas Code § 4-88-101 et seq.

    d. Cal. Civ. Code § 1770 et seq., Cal. Bus. & Prof Code § 17200 et seq., and Cal.Bus. & Prof. Code § 17070.

    e. Colo. Rev. Stat. § 6-1-101 et seq.

    f. Conn. Gen. Stat. § 42-110A, et seq.

    g. 6 Del. Code § 2513 et seq. and 6 Del. Code § 2532 et seq.

    h. Florida Stat. § 501.201 et seq.

    i. Idaho Code § 48-601 et seq.

    j. 815 Ill. Comp. Stat. 505/1 et seq. and 815 Ill. Comp. Stat. 510/1 et seq.

    k. Ind. Code § 24-5-0.5-3.

    l. Kan. Stat. Ann. § 50-623 et seq.

    m. Me. Rev. Stat. Ann. Tit. 5 § 205-A et seq.

n. Mass. Gen. Laws chapter 93A § 1 et seq.

o. Mich. Comp. Laws § 445.901.

p. Minn. Stat. § 325F.69 et seq. and Minn. Stat. § 325D.43 et seq.

q. Neb. Rev. Stat. § 87-302 and Neb. Rev. Stat. § 59-1601 et seq.

r. Nev. Rev. Stat. § 598.0903 et seq.

s. New Hampshire Rev. Stat. § 358-A:1 et seq.

t. N.J. Stat. Ann. § 56:8-1, et seq.

u. New Mexico Stat. Ann. § 57-12-1 et seq.

v. N.Y. Gen. Bus. Law § 349 et seq.

w. North Carolina Gen. Stat. § 75-1.1 et seq.

x. N.D. Cent. Code § 51-15-02.

y. S.D. Codified Laws § 37-24-6 et seq.

z. Tex. Bus. & Com. Code § 17.41 et seq.

aa. Rev. Code Wash. Ann. § 19.86.010 et seq.

bb. Wisc. Stat. § 100.18 et seq.

### Second Cause of Action – Fraud

34. As set forth above, Defendant fraudulently and improperly mislabeled new Superbeets products and advertised these new Superbeets products to convince consumers that the new Superbeets products contained superbeets and enhancing nitric oxide production. These representations were untrue, and Defendant knew they were untrue when they were made. Defendant made these representations to entice Plaintiff and all class members into buying the products.

35. Additionally, Defendant committed fraud in failing to inform consumers that the new Superbeets products did not contain nitric oxide and did not enhance nitric oxide production. Defendant fraudulently omitted this material information so Plaintiff and all Class

Members would act on them by purchasing the new Superbeets products they would not have purchased, and this caused Plaintiff and all Class Members' economic damages.

### Third Cause of Action - Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq. Violation of Written Warranty Under Federal Law

36. The MMWA, 15 U.S.C. §§ 2301, et seq., creates a private federal cause of action for breach of a "written warranty" as defined by the Act. 15 U.S.C. § 2301(6) and § 2310(d)(1). Defendant's new Superbeets products are "consumer products" as that term is defined by 15 U.S.C. § 2301(1), as they constitute tangible personal property which is distributed in commerce and which is normally used for personal, family or household purposes.

37. Plaintiff and members of the Class are "consumers" as defined by 15 U.S.C. § 2301(3), since they are buyers of Defendant's new Superbeets products for purposes other than resale. Defendant is an entity engaged in the business of making its new Superbeets products available, either directly or indirectly, to consumers such as Plaintiff and the Class. As such, Defendant is a "supplier" as defined in 15 U.S.C. § 2301(4).

38. Through its labeling, Defendant gave and offered a written warranty to consumers relating to the nature and quality of the ingredients in Defendant's new Superbeets products. As a result, Defendant is a "warrantor" within the meaning of 15 U.S.C. § 2301(5). Defendant provided a "written warranty" within the meaning of 15 U.S.C. § 2301(6) for the new Superbeets products by identifying the ingredients in the ingredients list on each of the new Superbeets products, and then prominently affirming and promising in writing on the labeling of the new Superbeets products that it contained superbeets and enhanced nitric oxide production. This affirmation of fact regarding the nature and qualities of the ingredients in the new Superbeets products was intended to convey to purchasers a written promise that new Superbeets products contained superbeets and enhanced nitric oxide production.

39. As such, these written promises and affirmations were part of the basis of Plaintiff's and the Class' bargain with Defendant in purchasing the new Superbeets products. Defendant breached its written warranty by failing to provide and supply the new Superbeets products with superbeets and a formula that enhances nitric oxide production. Since the ingredients in the new Superbeets products did not have the requisite qualities and character promised by Defendant's written warranties, the new Superbeets products were therefore not defect free, and did not comply with Defendant's obligation under the written warranty to supply a product containing superbeets and a product that enhanced nitric oxide production.

40. Defendant was provided notice and a reasonable opportunity to cure the defects in the new Superbeets products and remedy the harm to Plaintiff and the Class, but failed to do so, as set forth above.

41. Plaintiff and members of the Class were injured by Defendant's failure to comply with its obligations under the written warranties, since Plaintiff and members of the Class paid for Superbeet products that did not have the promised qualities and nature that were promised to them and that they bargained for and paid a premium for when they could have instead purchased other less expensive alternative products.

42. Plaintiff and the Class therefore for this claim seek and are entitled to recover "damages and other legal and equitable relief" and "costs and expenses (including attorneys' fees based upon actual time expended)" as provided in 15 U.S.C. § 2310(d).

**Fourth Cause of Action - False Advertising**

43. Defendant advertises and offers for sale various supplements, including but not limited to, the new Superbeets products. Defendant makes numerous false and misleading representations regarding the new Superbeets products. For example, and without limitation, Defendant mislabel and marketed the products in a way that indicated the products contained

13

superbeets and enhanced nitric oxide production among other misrepresentations.

44. Defendant disseminated or caused to be disseminated deceptive advertising of the new Superbeets products to the general public through various media. Such advertising, including product packaging, represented the new Superbeets products as having specific nutritional properties, which made them healthier than their competitors. These advertisements were false and misleading because, in reality, the new Superbeets products did not have the nutritional properties as advertised, deviating in some instances by more than 100% of the represented values, and they were often less healthy than competitive products.

45. Defendants continue to disseminate or cause to be disseminated such deceptive statements as alleged herein. The false and deceptive statements regarding the nutritional contents of new Superbeets products disseminated by Defendant are likely to deceive the consuming public.

46. While disseminating or causing to be disseminated the false and deceptive statements regarding the nutritional contents of new Superbeets products alleged above, Defendant knew or should have known that the statements were false or misleading.

47. As a direct and proximate result of Defendant's false and misleading advertising, Plaintiff and the members of the Class have been injured in fact, in that they purchased the new Superbeets products in reliance on Defendants' false and misleading advertising as to the nutritional contents of their products, and they would not have purchased the new Superbeets products had they known of the products true nutritional values.

48. Defendant's false and misleading advertising as alleged above presents a continuing threat to Plaintiff, the Class, and members of the public because Defendant persists and continues to disseminate false and misleading advertising and will not cease doing so unless and until enjoined or restrained by this Court.

49. Defendant's actions, as described above, constitute false and misleading descriptions and misrepresentations of fact in commerce that, in commercial advertising and promotion, misrepresent the nature, characteristics, and qualities of their products in violation of the law.

## INJUNCTIVE RELIEF

50. Plaintiffs re-allege each and every allegation contained in this Petition as though fully set forth herein.

51. Defendant is still marketing its products which are misleading, misrepresent their ingredients, and misrepresent their benefits.

52. Defendant's products are dietary supplements and are regulated by the FDA as food, not as drugs. Defendant markets these products as having health benefits but is not required to submit the products to the FDA for approval. Any FDA regulations for these supplements are minimum standards and are not enough to protect consumers.

53. Plaintiff and the class members seek injunctive relief to prevent Defendant from marketing and selling their deceptively marketed and labeled products. These products include the new superbeets products that do not contain superbeets and do not enhance nitric oxide production. Defendant continues to market and sell these products by claiming they contain superbeets and enhance nitric oxide production.

54. Injunctive relief is necessary to protect consumers from physical and economic harm by preventing the sale of products by improperly claiming they contain superbeets and enhance nitric oxide production.

## DAMAGES

55. Defendant is liable to Plaintiff and all Class Members and Plaintiff and all Class Members are entitled to recover the following damages:

a. Actual damages;

b. All DTPA damages;

c. Reasonable attorneys' fees; and

d. Court costs.

## CONDITIONS PRECEDENT

56. All conditions have been performed or occurred for all claims asserted herein.

## DEMAND FOR TRIAL BY JURY

57. Plaintiff and Class Members hereby demand trial by jury on all claims for which the law provides a right to jury trial.

## PRAYER FOR RELIEF

58. WHEREFORE, PREMISES CONSIDERED, Plaintiff herein, on behalf of herself and those similarly situated, respectfully pray:

a) That the Court enter an order certifying this action as a Class Action;

b) For actual damages in an amount to be determined by a jury;

c) For exemplary and punitive damages according to proof;

d) For costs of suit incurred herein, including reasonable attorneys' fees; and

e) For such other and further relief, in law or in equity, to which Plaintiff and those similarly situated may be justly entitled and this Court deems just and proper.

Respectfully submitted,

RUSTY HARDIN & ASSOCIATES LLP

By:  /s/ Ryan Higgins
Rusty Hardin
State Bar No. 08972800
Ryan Higgins
Texas Bar No. 24007362

                Daniel R. Dutko
                State Bar No. 24054206
5 Houston Center
1401 McKinney Street, Suite 2250
Houston, Texas 77010
Telephone: (713) 652-9000
Facsimile: (713) 652-9800
rhardin@rustyhardin.com
ddutko@rustyhardin.com
rhiggins@rustyhardin.com