# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| ABDEE SHARIFAN on behalf of himself and for all others similarly situated, | § § § | |
| | § | |
| *Plaintiffs,* | § § | Civil action no. 4:21-cv-01940 |
| | § | |
| v. | § | |
| | § | |
| NEOGENIS LABS, INC. D/B/A HUMANN, | § § | **ORAL ARGUMENT REQUESTED** |
| | § | |
| *Defendant* | § § | |

**DEFENDANT HUMAN POWER OF N CO'S (F/K/A NEOGENIS LABS, INC.) MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT (Dkt. No. 7)**

# <u>TABLE OF CONTENTS</u>

**Page**

I.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING. ........ 1

II.   STATEMENT OF ISSUES TO BE DECIDED/STANDARD OF REVIEW ......... 2

III.  SUMMARY OF ARGUMENT .................................................................................... 3

IV.   FACTUAL BACKGROUND ..................................................................................... 4

V.    THE COMPLAINT FAILS TO STATE A DTPA CLAIM .................................... 7

       A.    Plaintiff fails to plead reasonable or justifiable reliance ................... 8

       B.    HumanN's use of the "SuperBeets" brand name accurately
           identifies HumanN as the source of its products .............................. 14

VI.   THE COMPLAINT FAILS TO ALLEGE FRAUD ............................................. 19

CONCLUSION .................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................... 2

*Barnett v. Forest River, Inc.*,
    No. 9:17-cv-99, 2017 WL 7733052 (E.D. Tex. Nov. 29, 2017) .................................. 24

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................... 2

*Boyd v. TTI Floorcare N. Am.*,
    230 F. Supp. 3d 1266 (N.D. Ala. 2011) ........................................................ 16

*Budhani v. Monster Energy Co.*,
    20-cv-1409, 2021 WL 1104988 (S.D.N.Y. Mar. 22, 2021) ........................................ 18

*Carrizales v. State Farm Lloyds*,
    No. 3:18-cv-0086, 2018 WL 1697584 (N.D. Tex. Apr. 6, 2018) ............................... 18

*Carroll v. Fort James Corp.*,
    470 F.3d 1171 (5th Cir. 2006) ................................................................... 24

*Carter v. Target Corp.*,
    541 F. App'x 413 (5th Cir. 2013) ......................................................... 14, 23

*Coffel v. Stryker Corp.*,
    284 F.3d 625 (5th Cir. 2002) ................................................................... 19

*Cruz v. Andrews Restoration, Inc.*,
    364 S.W.3d 817 (Tex. 2012) ....................................................................... 9

*Cushman v. GC Servs., LP*,
    657 F. Supp. 2d 834 (S.D. Tex. 2009)) ......................................................... 8

*Dashnau v. Unilever Mfg. (US), Inc.*,
    19-cv-10102, 2021 WL 1163716 (S.D.N.Y. Mar. 26, 2021) ...................................... 17

*Deburro v. Apple, Inc.*,
    No. 13-cv-784, 2013 WL 5917665 (W.D. Tex. Oct. 31, 2013) .................................... 8

*Fahey v. Whole Foods Mkt., Inc.*,
   No. 20-cv-6737, 2021 WL 2816919 (N.D. Cal. Jun. 30, 2021) .................................. 18

*Frith v. Guardian Life Ins. Co. of Am.*,
   9 F. Supp. 2d 734 (S.D. Tex. 1998) ............................................................................... 8

*Green v. Bissell Homecare Inc.*,
   No. 2:10-cv-02421, 2011 WL 13175163 (N.D. Ala. July 29, 2011).......................... 16

*Gregory v. Conn. Shotgun Mfg. Co.*,
   No. 12-15-00304-CV, 2017 WL 511222 (Tex. App.—Tyler, Feb. 8, 2017) ............. 13

*Hale v. Assurity Life Ins. Co.*,
   No. 20-cv-250, 2020 WL 5995697 (W.D. Tex. Oct. 9, 2020)................................. 3, 8

*Henry Schein, Inc. v. Stromboe*,
   102 S.W.3d 675 (Tex. 2003)......................................................................................... 9

*Hodges v. Apple, Inc.*,
   640 F. App'x 687 (9th Cir. 2016) ............................................................................... 15

*Hong v. Nations Renovations, LLC*,
   No. 05-15-1036-CV, 2016 WL 7473900 (Tex. App.—Dallas Dec. 29, 2016) ............ 8

*HTC Leleu Family Trust v. Piper Aircraft, Inc.*,
   571 F. App'x 772 (11th Cir. 2014) .............................................................................. 20

*Johnson v. Metabolife Int'l, Inc.*,
   3:01-cv-2082, 2002 WL 32494514 (N.D. Tex. Oct. 23, 2002) .................................. 20

*Kehoe v. Pollack*,
   526 S.W.3d 781 (Tex. App.—Houston 2017) ...................................................... 13, 14

*Krames v. Bohannon Holman, LLC*,
   No. 3:06-cv-2370, 2009 WL 762205 (N.D. Tex. Mar. 24, 2009) ................................ 8

*Lisowski v. Henry Thayer Co.*,
   501 F. Supp. 3d 316 (W.D. Pa. 2020).......................................................................... 16

*McKinnis v. Kellogg USA*,
   No. 07-cv-2611, 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007)................................. 17

*McNamara v. Bre-X Minerals Ltd.*,
   197 F. Supp. 2d 622 (E.D. Tex. 2001).................................................................. 12, 21

*Miller v. Showcase Homes, Inc.*,
   No. 98-cv-2009, 1999 WL 199605 (N.D. Ill. Mar. 31, 1999) ..................................... 16

*Oppenheimer v. Prudential Sec. Inc.*,
   94 F.3d 189 (5th Cir. 1996) ........................................................................................ 19

*Parham v. Aldi, Inc.*,
   No. 19-cv-8975, 2021 WL 4296432 (S.D.N.Y. Sept. 21, 2021) ................................. 17

*Patel v. Holiday Hospitality Franchising, Inc.*,
   172 F. Supp. 2d 821 (N.D. Tex. 2001) ...................................................................... 19

*Peacock v. AARP, Inc.*,
   181 F. Supp. 3d 430 (S.D. Tex. 2016) ............................................................... 2, 3, 8

*R & L Inv. Prop., LLC v. Hamm*,
   3:10-cv-00864, 2011 WL 2462102 (N.D. Tex. June 21, 2011)................................... 20

*Rhima v. JP Morgan Chase Bank, N.A.*,
   No. 4:12-cv-49, 2012 WL 1853804 (N.D. Tex. May 18, 2012)................................... 12

*Richardson v. Foster & Sear, L.L.P.*,
   257 S.W.3d 782 (Tex. App. 2008)............................................................................... 18

*Rubenstein v. The Gap, Inc.*,
   14 Cal. App. 5th 870 (2017) ...................................................................................... 15

*Ryan v. Brookdale Int'l Sys., Inc.*,
   06-cv-01819, 2007 WL 3283655 (S.D. Tex. Nov. 6, 2007)........................................ 20

*Rymes v. Caribbean Cowboy, LLC*,
   No. 04-12-00032-CV, 2013 WL 1701790
   (Tex. App.—San Antonio, Apr. 18, 2013) ................................................................. 13

*Shushany v. Allwaste, Inc.*,
   992 F.2d 517 (5th Cir. 1993) ...................................................................................... 20

*Silver v. PA Sports Nutr., LLC*,
   No. 20-cv-633, 2020 WL 2992873 (N.D. Cal. Jun. 4, 2020) ...................................... 12

*Spong v. Fidelity Nat'l Prop. & Ca. Ins. Co.*,
   701 F. App'x 316 (5th Cir. 2017) ................................................................................. 9

*Sugawara v. Pepsico, Inc.*,
   No. 2:08-cv-1335, 2009 WL 1439115 (E.D. Cal. May 21, 2009).............................. 17

*Twohig v. Shop-Rite Supermarkets, Inc.*,
　　519 F. Supp. 3d 154 (S.D.N.Y. 2021) ........................................................... 17

*Umami Burger Licensing USA, LLC v. Umami Mia Pizzeria, LLC,*
　　No. 13-cv-511, 2013 WL 12085121 (W.D. Tex. Aug. 30, 2013) ........................ 12, 13

*VTX Comm. LLC v. AT&T Inc.*,
　　No. 7:19-cv-0269, 2020 WL 4465968 (S.D. Tex. Aug. 4, 2020) .......................... 24, 25

*Williams v. Mercantile Bank of St. Louis, N.A.*,
　　845 S.W.2d 78 (Mo. Ct. App. 1993) ............................................................ 20

*Williams v. WMX Techs., Inc.*,
　　112 F.3d 175 (5th Cir. 1997) ..................................................................... 24

## Statutes & Rules

Class Action Fairness Act, 28 U.S.C. § 1332 (d)(2) ............................................. 1

Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.* .................................... 1

Texas Deceptive Trade Practices—Consumer Protection Act, Tex. Bus. & Com.
　　Code §§ 17.41 et seq., ....................................................................... *passim*

Fed. R. Civ. P. 9(b) ............................................................................... 2, 8

Defendant Human Power of N Company, formerly known as NeoGenis Labs, Inc. ("HumanN"), respectfully moves to dismiss with prejudice the Amended Complaint ("Am. Compl.") (Dkt. No. 7) (Sept. 10, 2021) of Plaintiff Abdee Sharifan ("Plaintiff").

## I.       STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING.

HumanN markets both functional foods and dietary supplements that incorporate beetroot powder and other ingredients under the brand name "SuperBeets®" (SuperBeets). Am. Compl. ¶¶ 18, 26. This line includes HumanN's original SuperBeets powder—a functional food containing beetroot and fermented beetroot powders that is mixed with water—and SuperBeets® Soft Chews, a dietary supplement containing beetroot powder and grape seed extract in a soft, chewable form. *Id*. ¶¶ 24, 26. Plaintiff, who alleges he bought Soft Chews in late 2020 and early 2021, *id.* ¶¶ 31-33, brought this putative consumer class action suit on June 14, 2021, claiming HumanN's marketing of Soft Chews and other products is deceptive, and asserting jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332 (d)(2). Complaint (Jun. 14, 2021) [Dkt. 1], ¶ 4.

Plaintiff's initial pleading asserted claims under the Texas Deceptive Trade Practices—Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code §§ 17.41 *et seq.*, and for common law fraud, as well as claims for false advertising and alleged breach of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.* Complaint at ¶¶ 31-49. After an initial meet-and-confer between counsel for the parties, Plaintiff advised he would amend his pleading. Dkt. 6 (Aug. 31, 2021). The Amended Complaint, filed on September 10, 2021, deleted Plaintiff's purported false advertising and warranty claims, and added allegations about Plaintiff and his purchase of Soft Chews. Am. Compl. ¶¶ 30-33.

Plaintiff continues to assert claims under the DTPA and for common law fraud, purportedly on a class-wide basis, and seeks damages and injunctive relief. Am. Compl. ¶¶ 35-45. Following a further conference between counsel on September 21, 2021, *see* Certificate of Conference, and as allowed by this Court's Order, Minute Entry (Oct. 5, 2021). HumanN now brings this motion to dismiss Plaintiff's Amended Complaint.

## II.   STATEMENT OF ISSUES TO BE DECIDED/STANDARD OF REVIEW

**<u>Issue to Be Decided:</u>** Whether the Amended Complaint should be dismissed for its failure to state a claim upon which relief may be granted, where Plaintiff failed to allege his DTPA and fraud claims with particularity, and instead alleges facts showing that any reliance on alleged misrepresentations by HumanN was unreasonable and unjustified.

**<u>Standard of Review:</u>** "To state a claim upon which relief may be granted, plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face,' and must plead those facts with enough specificity 'to raise a right to relief above the speculative level.'" *Peacock v. AARP, Inc.,* 181 F. Supp. 3d 430, 433 (S.D. Tex. 2016) (Hanks, J.) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 & 570 (2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In deciding this Motion, the Court may consider the pleadings, matters subject to judicial notice, and materials referenced in the complaint and central to its claims. *Id.* at 434.

Where, as here, the plaintiff alleges violations of the Texas DTPA and common law fraud, those claims are subject to the requirements of FED. R. CIV. P. 9(b). *Id.* at 435. Thus,

Plaintiff must plead with particularity, "set[ting] forth the 'who, what, when, where, and how' of the fraud alleged." *Id.* For Plaintiff to state viable claims, the "[f]acts and circumstances constituting charged fraud must be specifically demonstrated and cannot be presumed from vague allegations." *Hale v. Assurity Life Ins. Co.*, No. 20-cv-250, 2020 WL 5995697, at *2 (W.D. Tex. Oct. 9, 2020).

## III.   SUMMARY OF ARGUMENT

Plaintiff fails to meet his burden of pleading with particularity facts showing that HumanN injured him by deceptively marketing its products. Plaintiff implausibly alleges he relied on "the advertising of HumanN claiming the Superbeets Soft Chews ***contained the exact same formula and ingredients as the original superbeets*** [sic]," and asserts he "would not have purchased the Superbeets Soft Chews if he had known the product ***did not contain the original superbeets*** [sic] ***formula*** . . . ." Am. Compl. ¶¶ 32-33 (emphasis added). But Plaintiff cites no advertising in which HumanN claimed Soft Chews "contained the exact same formula and ingredients" as the original SuperBeets. Instead, the alleged advertising he incorporates in his pleading includes side-by-side images of the labeling for original SuperBeets (below left) and Soft Chews (below right), which show the opposite:



Am. Compl. ¶ 26. As the pleading reflects, the original SuperBeets product is expressly

labeled as containing beetroot powder and fermented beetroot powder, while Soft Chews contain beetroot powder and grape seed extract. They are ***not*** advertised as "contain[ing] the exact same formula and ingredients," as Plaintiff erroneously alleges.

Plaintiff also fails to allege facts to show his reliance on HumanN's alleged misrepresentations was reasonable or justified. As the labeling Plaintiff incorporates into his pleading shows, while both products have beetroot powder, the original SuperBeets is also formulated with fermented beetroot powder, while Soft Chews is made with grape seed extract. Even a cursory glance at this labeling would advise a reasonable consumer that the products share a common ingredient, but also have different ingredients and unique formulations. In the face of this explicit disclosure, Plaintiff could not reasonably or justifiably rely on any supposed representation that the products "contained the exact same formula and ingredients." Because the pleading negates a necessary element for claims under the DTPA and for fraud, which require such reasonable reliance, the Amended Complaint should be dismissed.

## IV.   FACTUAL BACKGROUND

Beetroot can be a source of dietary nitrites and nitrates—nutrients which the human body metabolizes to produce nitric oxide that may, for example, help to lower blood pressure, decrease muscle soreness, and boost exercise performance. Am. Compl. ¶¶ 16-18, 20. HumanN markets nutritional supplements and functional foods incorporating beetroot powder and other ingredients, such as grape seed extract, including a line of products under the SuperBeets brand name. *Id.* ¶¶ 18, 26.

Plaintiff acknowledges that HumanN's original SuperBeets product was well-

researched, carefully formulated, and provides significant benefits. Am. Compl. ¶¶ 18-20. A functional food that contains both beetroot powder and fermented beetroot powder, the original SuperBeets is sold as a powder, to be mixed with water and consumed like beetroot juice. *Id.* ¶ 26. The pleading alleges that after the 2012 Olympics, "[non-party] Nathan Bryan and HumanN began researching the use of beets as a vehicle to deliver HumanN's patented nitric oxide science." *Id.* ¶ 16.[1] "HumanN created a process that delivered a specific amount of nitrite that, based on published clinical trials, would enhance performance." *Id.* The Amended Complaint continues that "Nathan Bryan spent weeks in the laboratory of Florida Food Products," one of HumanN's ingredient suppliers, "helping to develop a fermentation process that would concentrate nitrite in the beet product and maintain sufficient nitrate to enhance nitric oxide production." *Id.* ¶ 17.

The Amended Complaint alleges that HumanN relied on this research to develop its BeetElite® product, "which contained specific amounts of nitrite and nitrate." *Id.* ¶ 18. "HumanN launched Beet Elite in the sports performance market. After achieving some success in the sports performance market, HumanN then created Superbeets." *Id.* Plaintiff alleges the original "Superbeets was the same exact formula as Beet Elite except it contained a 5-gram dose instead of 10-gram dose." *Id.* Plaintiff concedes that HumanN

---

[1] HumanN licenses patents related to nitric oxide technology from the University of Texas. Am. Compl. ¶ 15. Nathan Bryan, who used to work for HumanN, is a named inventor on these patents. *Id.* Bryan and HumanN are involved in separate litigation in Travis County District Court, in Case No. D-1-GN-20-002772, and in the Western District of Texas, in Case No. 1:12-cv-811. Plaintiff's counsel in the instant action also represents Bryan in the *HumanN v. Bryan* cases. Although irrelevant to any claims pled in the instant suit, the Amended Complaint nevertheless discusses Bryan at length, and attributes HumanN's development of its original SuperBeets product to him. Am. Compl. ¶¶ 15-18.

confirmed the benefits of the original SuperBeets product through clinical studies:

> HumanN conducted clinical trials and tested Superbeets against other products. These clinical trials demonstrated Superbeets' superiority over every other beet product on the market. HumanN advertised these clinical trials and marketed Superbeets as containing superbeets [sic] and enhancing nitric oxide production.

*Id.* ¶ 19; *see also id.* at ¶ 20 ("Studies show that nitric oxide supplements lower blood pressure, decrease muscle soreness, and boost exercise performance. Nitric oxide supplements are also shown to help men with erectile disfunction.")

The Amended Complaint goes on to assert that, in addition to BeetElite and the original SuperBeets products, "HumanN created a new line of 'Superbeet' products," including "Superbeets Energy, Superbeets Immune, and Superbeets Collagen," and later "Superbeet Heart chews [sic] and Superbeet Memory and Focus." Am. Compl. ¶ 22. In contrast to the detailed allegations regarding the benefits of the original SuperBeets product, the Amended Complaint offers conclusory assertions that these "new products" do "not contain superbeets [sic] . . . ." *Id.* The pleading instead asserts "HumanN's new products used a cheap beet that did not contain any detectable amounts of nitrate or nitrite," but nevertheless "were named and marketed as if they contained Superbeets and as if they enhanced nitric oxide." *Id.* ¶ 23. Plaintiff thus asserts these "new products" "do not activate nitric oxide," *id.*, though he provides no facts supporting or explaining this bare conclusion.

The only product in the "Superbeets" line Plaintiff claims to have purchased is "Superbeets Soft Chews," *id.* ¶ 31, now called "Superbeets Heart Chews" ("Soft Chews"). Am. Compl. ¶ 24 (side-by-side packaging of Soft Chews and Heart Chews, explaining: "New look. Same amazing benefits.") Although he does not allege he ever purchased the

original SuperBeets powder product,[2] Plaintiff claims he purchased Soft Chews in reliance on HumanN's advertising of it as having "the exact same formula and ingredients as the original superbeets [sic] products." *See id.* ¶ 32:

> Sharifan purchased Superbeets Soft Chews believing the product contained nitric oxide because of the advertising of HumanN claiming the Superbeets Soft Chews contained the exact same formula and ingredients as the original superbeets [sic] products, including nitric oxide. In fact, Sharifan ordered the nitric oxide testing strips sold by HumanN because he was purposefully misled to believe the Superbeets Soft Chews contained nitric oxide.

On these facts, Plaintiff asserts HumanN violated the DTPA, Am. Compl. ¶¶ 35-36 (and also claims HumanN violated the consumer protection statutes of 28 other states, *id.* ¶ 37 (a)-(bb)), and engaged in common law fraud. *Id.* ¶¶ 38-39. Beyond class certification and a judgment apparently exceeding $5 million, *id.* at ¶ 4 (claiming jurisdictional amount under CAFA), the Amended Complaint seeks injunctive relief, *id.* ¶¶ 40-44, and actual, "DTPA," exemplary, and punitive damages. *Id.* at ¶¶ 45(a)-(d), 48(a)-(e).

## V.   THE COMPLAINT FAILS TO STATE A DTPA CLAIM

The Texas DTPA allows consumers to bring actions for damages or injunctive relief arising from "the use or employment by any person of a false, misleading, or deceptive act or practice" as "specifically enumerated" in the Act, and on which the consumer relied to his detriment, Tex. Bus. & Com. Code §§ 17.50(a)(1)(A) & (B), and for "any unconscionable action or course of action by any person . . . ." *Id.* at § 17.50(a)(3). To pursue a claim, a plaintiff thus must allege, and ultimately prove, that:

---

[2] Plaintiff alleges "it was not until HumanN began heavily advertising Superbeets Soft Chews in 2020 that Sharifan actually began purchasing HumanN's products," Am. Compl. ¶ 30, and only identifies Soft Chews as a HumanN product he allegedly bought. *Id.* ¶ 31.

1. The plaintiff is a consumer;
2. The defendant committed acts in connection with the purchase or lease of any goods or services;
3. The defendant's acts were false, misleading, or deceptive; and
4. The acts were a producing cause of plaintiffs' injuries

*Cushman v. GC Servs., LP*, 657 F. Supp. 2d 834, 842 (S.D. Tex. 2009), *aff'd,* 397 F. App'x 24 (5th Cir. 2010); *Deburro v. Apple, Inc.*, No. 13-cv-784, 2013 WL 5917665, at *5 (W.D. Tex. Oct. 31, 2013).

Claims alleging violations of the Texas DTPA, like those asserting fraud, "are subject to the requirements of Rule 9(b)." *Peacock*, 181 F. Supp. 3d at 435 (citing *Frith v. Guardian Life Ins. Co. of Am.,* 9 F. Supp. 2d 734 , 742 (S.D. Tex. 1998); *Hale*, 2020 WL 5995697, at *2-3; *Krames v. Bohannon Holman, LLC*, No. 3:06-cv-2370, 2009 WL 762205, at *10 (N.D. Tex. Mar. 24, 2009). Thus:

> A plaintiff pleading fraud must specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.

*Peacock,* 181 F. Supp. 3d at 436 (quotations omitted). "Anything less fails to provide defendants with adequate notice of the nature and grounds of the claim." *Hale*, 2020 WL 5995697, at *2 (quotations omitted).[3]

### A. Plaintiff fails to plead reasonable or justifiable reliance

Under Texas law, "[p]roof of reliance is an essential element of fraud, fraudulent inducement, **and DTPA claims**." *Hejin Hong v. Nations Renovations, LLC,* No. 05-15-

---

[3] "The goals of Rule 9(b) are to provide defendants with fair notice of the plaintiffs' claims, protect defendants from harm to their reputation and goodwill, reduce the number of strike suits, and prevent plaintiffs from filing baseless claims." *Peacock*, 181 F. Supp. 3d at 435 (quotations, citations, and alterations omitted).

1036-CV, 2016 WL 7473900, at *5 (Tex. App.—Dallas Dec. 29, 2016) (citations omitted, emphasis added) (contractual disclaimer rendered plaintiff's alleged reliance on non-contractual statements unreasonable); *accord, Spong v. Fidelity Nat'l Prop. & Ca. Ins. Co.*, 701 F. App'x 316, 321 (5th Cir. 2017) (per curiam) (reliance is an element of a DTPA claim); *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 824 (Tex. 2012) (same); *Henry Schein, Inc. v. Stromboe,* 102 S.W.3d 675, 686 (Tex. 2003) (same).

Plaintiff alleges HumanN markets its "newer products" "as if they contained ***the exact same formula as the original Superbeets***." Am. Compl. ¶ 22 (emphasis added); *id.* at ¶ 24 ("HumanN markets the new products as if they contained the exact same superbeets [sic] and used the exact same nitric oxide boosting formula as the original Superbeets"). It is this supposed "exact same formulation" representation on which Plaintiff claims to have relied in purchasing Soft Chews *Id.* ¶ 32 ("Sharifan purchased Superbeets Soft Chews believing the product contained nitric oxide ***because of the advertising of HumanN claiming the Superbeets Soft Chews contained the exact same formula and ingredients as the original superbeets*** [sic] ***products***, including nitric oxide.") (emphasis added).

Plaintiff fails to identify any marketing or advertising in which HumanN claimed Soft Chews (or *any* of the "newer products") has the "exact same formulation" as the original SuperBeets product. Instead, the Amended Complaint attaches images of two alleged social media posts. The first undated post, from an unspecified social media platform, and in apparent response to an omitted question, states that both the original SuperBeets and Chews product share one of their ingredients—beetroot powder:

Am. Compl. ¶ 25. Contrary to Plaintiff's allegation, the post demonstrably does ***not*** "tell[] consumers these new products are identical to the original Superbeets formula." *Id.* Plaintiff also does not allege that what the post says is inaccurate. In fact, it is apparent from other allegations in the pleading that both products ***do*** contain beetroot powder. *See* Am. Compl. ¶ 26 (image of labels listing "beetroot powder" as ingredient in both products).

The second—again undated—social media post cited by Plaintiff, allegedly posted on Facebook (but appears, in fact, to be a Facebook Messenger message to an unidentified person) also does ***not*** declare "that these new products contain the exact same formula as the original Superbeets," as Plaintiff alleges. *Id.* Instead, it states: "You'll find they," the original SuperBeets and SuperBeets Heart Chews, "both have beetroot powder for heart-healthy benefits." *Id.* Plaintiff effectively admits this is true. The post provides "nutrition info" for both products, pasting into the post "Nutrition Facts" and "Supplements Facts" from the products' labels disclosing the ingredients and distinct formulation of each product, with the original SuperBeets powder (in two flavors) on top, and Soft Chews beneath them:





*Id.*

The images pasted into the Amended Complaint, comparing the packaging of the original SuperBeets powder product to that of the chews, illustrate HumanN clearly disclosed that these products have ***different formulations***. Am. Compl. ¶ 26. The original SuperBeets product is a *functional food* formulated as a *powder.* The directions instruct consumers to "[m]ix one teaspoon" of the powder "with four ounces of water," *id.,* and once mixed it is drank like beetroot juice. SuperBeets powder contains "Non-GMO Beetroot Powder" and "Non-GMO Beetroot Powder (fermented)," as well as magnesium

ascorbate and flavorings (including natural apple or black cherry flavoring, malic acid, and stevia leaf extract). *Id*. By contrast, Soft Chews—a *dietary supplement*—are formulated as *chews*, not a powder, and are eaten (not drank) right out of the pouch. They are formulated with beetroot powder and ***grape seed extract***, as well as tapioca syrup, raw cane sugar, rice bran, natural flavors, sunflower lectin, sunflower oil, malic acid, glycerin, citric acid, and rebaudioside A (stevia reaudiana leaf). *Id.* No reasonable consumer who read these ads could justifiably conclude that the products have the "exact same formula and ingredients."

To state a DTPA claim, a "plaintiff must actually rely on the defendant's alleged misrepresentations, and such reliance must be reasonable and justified." *Rhima v. JP Morgan Chase Bank, N.A.*, No. 4:12-cv-49, 2012 WL 1853804, at *3 (N.D. Tex. May 18, 2012); *McNamara v. Bre-X Minerals Ltd.*, 197 F. Supp. 2d 622, 698-99 (E.D. Tex. 2001) (dismissing fraud claims for failure to allege reliance). But here, Plaintiff notably fails even to allege he saw these undated posts/messages ***before*** buying Soft Chews, or indeed any time before his counsel prepared the pleadings. Such an allegation is critical in the context of social media communications. *Silver v. PA Sports Nutr., LLC*, No. 20-cv-633, 2020 WL 2992873, at *10 (N.D. Cal. Jun. 4, 2020) (dismissing consumer fraud claims based on social media ads, stating: "plaintiffs must be able to allege that they saw and relied on those specific advertisements to their detriment"). As Judge Sparks observed in a trademark case:

> consumers' exposure to internet media is extremely self-selected, in a way which was not true of more traditional media such as television, radio, and newspapers. Specifically, when a person opens a paper, tunes in a radio station, or selects a television station, the consumer will then be presented with whatever array of content the traditional media has chosen to present. By contrast, internet users must affirmatively seek out and choose to follow the typical social media advertising of a particular company, such as a

12

Facebook or Twitter account, before they will be exposed to such advertising. *Umami Burger Licensing USA, LLC v. Umami Mia Pizzeria, LLC,* No. 13-cv-511, 2013 WL 12085121, at *4 (W.D. Tex. Aug. 30, 2013). This is particularly true here, where one post (Am. Compl. ¶ 25) appears to be part of a longer thread (not attached), and the other (¶ 26) appears to be a private message in response to a question from an unidentified user.

Moreover, both posts explicitly refer to "Heart Chews," not "Soft Chews." *Id.* ¶¶ 25, 26. Plaintiff, however, alleges he purchased "Soft Chews"—a specific assertion added to the Amended Complaint after the parties' initial meet-and-confer on the lack of particularity in his initial pleading. He thus alleges he "purchased Superbeets Soft Chews in late 2020 and early 2021," and more particularly "on January 10, 2021." *Id.* ¶ 31. But the pleading also shows HumanN changed the product's name from "Soft Chews" to "Heart Chews." *Id.* ¶ 24. This change in fact occurred in mid-February 2021, that is, ***after*** Plaintiff bought "Soft Chews" in January, but before the "Heart Chews" posts appeared. This perhaps is why Plaintiff offers no information about the timing of these posts; it is clear he could not have seen, much less relied, on them before buying "Soft Chews."

In addition, a plaintiff ***cannot*** rely on a written statement that itself negates the alleged misrepresentation. E.g., *Rymes v. Caribbean Cowboy, LLC*, No. 04-12-00032-CV, 2013 WL 1701790, at *1 (Tex. App.—San Antonio, Apr. 18, 2013) (affirming rejection of DTPA claim, "hold[ing] that the appellants could not justifiably rely on an oral representation that directly contradicts the express terms of the parties' written agreement"); *see also Gregory v. Conn. Shotgun Mfg. Co.*, No. 12-15-00304-CV, 2017 WL 511222, at *3 (Tex. App.—Tyler, Feb. 8, 2017) (rejecting DTPA and fraud claims); *Kehoe*

13

*v. Pollack*, 526 S.W.3d 781, 797 (Tex. App.—Houston 2017) (fraudulent inducement).

Plaintiff's conclusory allegations that HumanN made a misrepresentation about identical ingredients and formulations, and Plaintiff's supposed reliance on those purported misrepresentations, are disproven by the very statements he cites in his complaint. "While it is true that" this Court "must accept all well-pleaded factual allegations as true for the purpose of a motion to dismiss, 'conclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint.'" *Carter v. Target Corp.,* 541 F. App'x 413, 417 (5th Cir. 2013). Here, the products' actual labeling disproves the Amended Complaint's conclusory allegations, and requires dismissal.

### B.   HumanN's use of the "SuperBeets" brand name accurately identifies HumanN as the source of its products

As the Amended Complaint illustrates, one of the ingredients in both HumanN's original SuperBeets powder and Soft Chews is ***beetroot powder***. Am. Compl. ¶ 26. Nowhere does the pleading dispute that each of HumanN's products in fact contains its listed ingredients. Instead, Plaintiff contends—without predicate, context, or support for the conclusion—that HumanN formulates its "new products," including Soft Chews, with "a cheap beet." Am. Compl. at ¶ 23. From this premise, Plaintiff asserts that while the original SuperBeets product "contained superbeets," Am. Compl. ¶¶ 18, the "new line of Superbeet products," presumably by using "cheap beets," "did not contain superbeets [sic]." *Id.* at ¶ 22. Thus, Plaintiff complains that HumanN misleadingly "marketed these products as if they contained Superbeets . . . ." *Id.* at ¶ 23.

"SuperBeets" is a brand name, **not an ingredient**.[4] As a registered trademark, "SuperBeets®" identifies HumanN's brand, and accurately tells consumers that HumanN is the *source* of the product. As a matter of law, HumanN's use of its own brand name on its own products cannot be false or misleading, and Plaintiff's attempt to conflate a brand name with an ingredient cannot be the basis for a consumer fraud claim. *See Hodges v. Apple, Inc.*, 640 F. App'x 687, 690 (9th Cir. 2016) (a company's "interest in protecting its trademarks and reputation by ensuring that the goods and services it offers satisfy expected standards of quality does not convert the trademark into an affirmative representation of either quality or consistency.")

In *Hodges,* the plaintiff complained that Apple's offer of computers manufactured by Samsung and LG Electronics under Apple's own "MacBook Pro" brand name constituted a violation of California's deceptive trade practices act. Rejecting this claim, the Ninth Circuit explained that "[w]hile a trademark may be a factual representation regarding **the source of the goods, it does not convey information, much less make an affirmative representation, about manufacturing processes or standards**." *Id.* (emphasis added). Other decisions are in accord. E.g., *Rubenstein v. The Gap, Inc.,* 14 Cal. App. 5th

---

[4] Plaintiff appears to distinguish between "SuperBeets" the brand and "superbeets" the supposed ingredient by generally capitalizing the former, and leaving the latter with a lower case "s." E.g., Am. Compl. ¶¶ 22 ("HumanN created a new line of 'Superbeet' products that did not contain superbeets [sic]"); 24 ("HumanN markets the new products as if they contained the exact same superbeets [sic] and used the exact same nitric oxide boosting formula as the original Superbeets"). Assuming this was his intent, he is inconsistent even in this. *Id.* ¶ 35 ("Defendant failed to disclose information regarding the fact that the new superbeets products did not contain Superbeets"). Regardless, "Superbeets" is a brand, and "superbeets" is *not* an ingredient name, irrespective of Plaintiff's creative capitalization.

870, 876 (2017) ("As a matter of law, Gap's use of its own brand name labels on clothing that it manufactures and sells at Gap-owned stores is not deceptive, regardless of the quality of the merchandise or whether it was ever for sale at other Gap-owned stores."); *Miller v. Showcase Homes, Inc*., No. 98-cv-2009, 1999 WL 199605, at *4 (N.D. Ill. Mar. 31, 1999) (finding "there is no support for plaintiffs' contention that the use of a trademark or trade name gives rise to an assurance of quality actionable under the Consumer Fraud Act.")

Consistent with this analysis, the courts in *Boyd v. TTI Floorcare N. Am.*, 230 F. Supp. 3d 1266, 1278-79 (N.D. Ala. 2011), and *Green v. Bissell Homecare Inc*., No. 2:10-cv-02421, 2011 WL 13175163, at *9 (N.D. Ala. July 29, 2011), *aff'd*, 476 F. App'x 238 (11th Cir. 2012), rejected a plaintiff's contention that the tradenames "SteamVac" and "PowerSteamer" represented a promise that the vacuums used steam to clean, or otherwise "warrant what those products will or can do." *Green*, 2011 WL 13175163, at *8. Instead, the appliance's tradename represented "an affirmation of what the product is—in other words, they provide a promise that the product sold is an authentic SteamVac® or PowerSteamer®. They do not create an affirmation of fact nor do they describe the cleaning process the product uses." *Id.* (collecting cases); *accord, Lisowski v. Henry Thayer Co., Inc.,* 501 F. Supp. 3d 316, 329-30 (W.D. Pa. 2020) (caselaw "uniformly holds that a trademark cannot create an express warranty," and holding defendant's mark represents only that "the product is in fact a legitimate product manufactured by Thayer's"), *reconsidered in part on other grounds*, No. 19-cv-1339, 2021 WL 1185924, at *2 (W.D. Pa. Mar. 30, 2021) ("the Court maintains its ruling that a trademark name cannot create an express warranty.")

16

Nor is it plausible a consumer would confuse the name of a product with a specific ingredient. *Sugawara v. Pepsico, Inc.,* No. 2:08-cv-1335, 2009 WL 1439115, at *5 (E.D. Cal. May 21, 2009) (rejecting claim that "Crunchberries" brand cereal was misleadingly labeled as containing actual berries, holding "a reasonable consumer would have understood the Product packaging to expressly warrant only that the Product contained sweetened corn and oat cereal, which it did."); *McKinnis v. Kellogg USA*, No. 07-cv-2611, 2007 WL 4766060, at *4 (C.D. Cal. Sept. 19, 2007) ("No reasonable consumer would view the trademark 'FROOT LOOPS' name as describing the ingredients of the cereal.")

On this point, *Parham v. Aldi, Inc.*, No. 19-cv-8975, 2021 WL 4296432 (S.D.N.Y. Sept. 21, 2021), is instructive. The court dismissed a New York consumer class action which alleged that a grocery store's marketing of a product as "vanilla" almond milk deceived consumers because it was not primarily flavored with real vanilla bean. The ingredients listed on its packaging did not, however, list "vanilla"—precluding any reasonable claim that the plaintiff could have been deceived. *Id.* at *4. The Court thus held that: "a reasonable consumer would understand that the word 'vanilla' on the front of the carton describes how the Product tastes, not what it contains, especially in circumstances where the ingredients listed on the Product container do not mention vanilla at all." *Id.* (quotations omitted) (construing *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 158-61 (S.D.N.Y. 2021) ("A reasonable consumer would understand that 'vanilla' is merely a flavor designator, not an ingredient claim.")); *see also Dashnau v. Unilever Mfg. (US), Inc.,* 19-cv-10102, 2021 WL 1163716 , at *4 (S.D.N.Y. Mar. 26, 2021) ("Plaintiffs have not plausibly alleged that a reasonable consumer who reads the words 'vanilla bean

ice cream' on the Product's front label would conclude that this labeling implies that the vanilla flavor is derived exclusively from 'real vanilla,' or from vanilla beans."); *Budhani v. Monster Energy Co.,* 20-cv-1409, 2021 WL 1104988, at *1, 3, 8 (S.D.N.Y. Mar. 22, 2021) (finding—in a case regarding an espresso drink that purported to be flavored with vanilla—that "a reasonable consumer could not draw the conclusion from the Product labelling that the vanilla bean (or vanilla bean extract) was the predominant or exclusive source of the vanilla flavor in the Product.")); *accord,* e.g., *Fahey v. Whole Foods Mkt., Inc.*, No. 20-cv-6737, 2021 WL 2816919, at *2 (N.D. Cal. Jun. 30, 2021) ("the Court holds—as many district courts across the country have—that the word 'vanilla' without any qualifying terms does not lead a reasonable consumer to believe that the vanilla flavor came exclusively or predominantly from vanilla beans").

Unlike the fruit cereal and vanilla flavoring cases, SuperBeets Soft Chews *do* contain beetroot powder, Am. Compl. ¶ 26, and Plaintiff fails to allege facts showing a consumer would be deceived by this product's name. Instead, "SuperBeets" accurately represents that the product offered under this brand name comes from HumanN—a representation Plaintiff does not and cannot gainsay. HumanN's use of its own registered trademark in marketing and promoting its own products cannot be "false" or "misleading."[5]

---

[5] The Amended Complaint is also procedurally flawed. A plaintiff intending to bring a DTPA suit must provide defendant reasonably detailed notice at least sixty days before bringing suit. Tex. Bus. & Com. Code § 17.505(a); *Richardson v. Foster & Sear, L.L.P.*, 257 S.W.3d 782, 786 (Tex. App. 2008) (notice must advise defendant of specific complaints and nature and amount of all damages). The Amended Complaint raises no allegations regarding pre-suit notice, and Plaintiff fails to attach any such notice to the pleading. Accordingly, if not dismissed, the action should be abated. *Carrizales v. State Farm Lloyds*, No. 3:18-cv-0086, 2018 WL 1697584, at *4 (N.D. Tex. Apr. 6, 2018) (citing

## VI.    THE COMPLAINT FAILS TO ALLEGE FRAUD

The elements of fraud under Texas law include:

1.    A material representation was made;
2.    The representation was false when made;
3.    The speaker either knew it was false, or made it without knowledge of its truth;
4.    The speaker made the representation with the intent that the other party should act on it;
5.    The party acted in reliance; and
6.    The party was injured as a result.

*Coffel v. Stryker Corp.*, 284 F.3d 625, 631 (5th Cir. 2002).

Plaintiff fails to plead even a single element of fraud with the required particularity. Plaintiff fails to set forth the "who, what, when, and where" of any misrepresentation, nor does he plead facts sufficient to show "how" any statement allegedly made was false.

As explained above, Plaintiff's contention that HumanN's alleged social media posts "tells consumers these new products are identical to the original Superbeets formula," Am. Compl. ¶ 25, is demonstrably erroneous, and indeed is belied by the alleged posts themselves. *Id.* ¶¶ 25-26. Beyond this fundamental flaw, Plaintiff also fails to set forth *when* these posts allegedly were made, whether or how long they were visible to the public, and in the case of the post copied in Paragraph 25, fails to state *where* the post allegedly appears. These omissions are fatal to a claim for fraud. *Patel v. Holiday Hospitality Franchising, Inc.*, 172 F. Supp. 2d 821, 824 (N.D. Tex. 2001) ("To plead fraud with particularity, a plaintiff must, at a minimum, ***include the time, place, and contents of the false representations***, as well as identify the speaker who made the misrepresentation and

---

*Oppenheimer v. Prudential Sec. Inc.*, 94 F.3d 189, 194 (5th Cir. 1996)).

what that person obtained thereby.") (emphasis added) (citing *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 521 (5th Cir. 1993)); *accord*, *Ryan v. Brookdale Int'l Sys., Inc.*, 06-cv-01819, 2007 WL 3283655, at *7 (S.D. Tex. Nov. 6, 2007) ("Without knowing when an advertisement ran, much less where it was seen or heard, a defendant may have little ability to identify the particular advertisement and prepare its defense."); *Johnson v. Metabolife Int'l, Inc.*, 3:01-cv-2082, 2002 WL 32494514, at *3-4 (N.D. Tex. Oct. 23, 2002) (fraud claim failed where plaintiff was unable to plead location, date, time, and "specific contents, context, or speaker of these advertisements"); *R & L Inv. Prop., LLC v. Hamm*, 3:10-cv-00864, 2011 WL 2462102, at *4 (N.D. Tex. June 21, 2011) (claim that defendants "caused advertisements to be created which represented to the world that the property had a waste water treatment permit" dismissed where plaintiffs failed to state "who made the advertisement, when, and where.")

Plaintiff also fails to assert he actually saw either of these posts before allegedly purchasing Soft Chews—which is necessary for Plaintiff to even begin to plead facts sufficient to satisfy the reliance element of fraud. E.g., *HTC Leleu Family Trust v. Piper Aircraft, Inc.*, 571 F. App'x 772, 777-78 (11th Cir. 2014) (affirming dismissal based on District Court's conclusion that plaintiff "could not show injury or reliance because the alleged misrepresentations occurred after its purchase of the 384 Aircraft"); *Williams v. Mercantile Bank of St. Louis, N.A.*, 845 S.W.2d 78, 84 (Mo. Ct. App. 1993) (rejecting fraud claim because there could be no reliance on "misrepresentations that allegedly occurred after the automobile purchase transaction was entered into.") Because Plaintiff fails to plead facts showing reasonable or justified reliance, Plaintiff's fraud claim, like his DTPA

claim, must be dismissed. *McNamara.*, 197 F. Supp. 2d 698-99 (fraud claims dismissed for failure to allege reliance).[6]

Plaintiff's contention that "HumanN markets the new products as if they . . . ***used the exact same nitric oxide boosting formula*** as the original Superbeets," Am. Compl. ¶ 24 (emphasis added), is even more vague than his formulation and ingredient allegations, with no reference to any specific advertising, much less allegations about where or when this supposed advertising appeared, what the contents and context of the advertising were, and whether Plaintiff actually viewed it before his supposed purchase of Soft Chews. Instead, Plaintiff inexplicably juxtaposes images of advertising for the original SuperBeets powder (image left), which accurately describes benefits of the product (as Plaintiff himself concedes, Am. Compl. ¶¶ 18-20), alongside a blurry but different ad (image right) announcing the name change of "Soft Chews" to "Heart Chews." *See id.* ¶ 24:

 

---

[6] As noted above, both posts refer specifically to "Heart Chews," Am. Compl. ¶¶ 25 & 26, a name change which occurred *after* Plaintiff alleges he made his purchases of "Soft Chews" in late 2020 and January 2021. *Id.* ¶¶ 31, 32. Thus, he could *not* have relied on these posts for his alleged purchases.

Again, there are no allegations as to when or where these separate images appeared, or any allegation Plaintiff saw either image (much less both together), or relied on them in allegedly purchasing Soft Chews.[7] But beyond this, there is no mention of nitric oxide in the image to the right, reflecting Soft Chews packaging (as a less blurry image shows):



<hr/>

[7] The "New Look" ad ran on Amazon beginning around February 16, 2021, at about the time the Soft Chews' name changed to "Heart Chews." Plaintiff could *not* have seen or relied on this ad before making his alleged January 10, 2021 purchase. Am. Compl. ¶ 31.

Indeed, the only reference to the letters "NO" (an abbreviation for nitric oxide) on Soft Chews' labeling advises that Soft Chews contains "No artificial sweeteners." *Id.* ¶ 26.

It appears Plaintiff placed the image of the ad for the original SuperBeets on the left next to the image of the ad for Soft Chews on the right to imply that the legend "New Look. Same Amazing Benefits," somehow refers to the benefits of the original SuperBeets product. But any such association is contrary to the plain language of the ad, which expressly describes the name change for Soft Chews to Heart Chews. The ad's use of "previous look" underneath Soft Chews, and "new look" under Heart Chews, *id.* ¶ 24. illustrates this fact, in context, and beyond question (as the less blurry image shows). Beyond this, both the before-and-after packaging for Soft Chews highlights their use of "CLINICALLY RESEARCHED Grape Seed Extract," a key ingredient in Soft Chews not found in the original SuperBeets powder. *Id.*

While the Court may accept *well-pleaded* factual allegation as true, it need not accept "unwarranted deductions of fact," particularly where they are "contradicted by facts disclosed by a document" incorporated in the pleadings. *Carter*, 541 F. App'x at 417. Thus, Plaintiff's claims premised on this side-by-side juxtaposition—whether based on common law or under the DTPA—must be dismissed.

Finally, Plaintiff raises vague allegations that "HumanN even falsely claimed these new products 'activate nitric oxide' when they actually contain no nitric oxide and do not activate nitric oxide." Am. Compl. ¶ 23. Again, the Amended Complaint fails to identify any such advertising with particularity (or, indeed, at all), much less facts showing that Plaintiff reasonably and justifiably relied on any such marketing. Beyond all of this,

Plaintiff fails to offer allegations as to the "why" and "how" such a statement, if made by HumanN and relied upon by Plaintiff, was actually false or misleading. Plaintiff offers only the conclusory allegation that HumanN uses "cheap beats," *id.*, and the even more conclusory assertion that HumanN's "newer products" "do not activate nitric oxide." *Id.*

But Plaintiff fails to offer any specific facts which, if accepted, would allow a finder of fact to conclude that this is so. Plaintiff never alleges that he undertook testing of Soft Chews and determined that the product in fact does not "activate nitric oxide." He does not allege any scientific studies showing that grape seed extract, a key ingredient in Soft Chews and emphasized by HumanN's advertising for Soft Chews, does not support nitric oxide production. But such "'why' and 'how'" allegations are "crucial" to pleading fraud (or a DTPA claim). *VTX Comm. LLC v. AT&T Inc.*, No. 7:19-cv-0269, 2020 WL 4465968, at *30 (S.D. Tex. Aug. 4, 2020) (rejecting fraud claim where "Nothing in Plaintiffs' allegations 'explains why the statements were fraudulent' or 'the way in which [allegedly] omitted facts made the representations misleading.'") (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997), and *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006)) (footnotes omitted)); *accord,* e.g., *Barnett v. Forest River, Inc.,* No. 9:17-cv-99, 2017 WL 7733052, at *3 (E.D. Tex. Nov. 29, 2017) (dismissing DTPA claim for failure to plead with particularity because pleading did not "explain why" representation regarding a recreational vehicle "was false, misleading, or deceptive.")

These same failings apply to Plaintiff's conclusory allegations that "HumanN knew these products do not contain Superbeets and do not have any detectable amounts of nitrite or nitrate." Am. Compl. ¶ 23. Here, "Plaintiffs' allegation that Defendants knew their

representations were false and misleading and caused injury is conclusory because it pleads no facts to substantiate Plaintiffs' conclusions[.]" *VTX Comm.*, 2020 WL 4465968, at *30.

HumanN is entitled to know on what basis Plaintiff alleges that its products purportedly are fraudulently or deceptively marketed. The Amended Complaint utterly fails to provide this critical information. It therefore should be dismissed, with prejudice.

## **CONCLUSION**

Defendant asks the Court to dismiss with prejudice Plaintiff's Amended Complaint.


Dated: October 15, 2021

Respectfully submitted,

SHEARMAN & STERLING, LLP
By:  __/s/   *Saul Perloff*_____
**Saul Perloff**
  State Bar: 00795128
  saul.perloff@shearman.com
Bob Rouder
  State Bar: 24037400
  bob.rouder@shearman.com
**SHEARMAN & STERLING, LLP**
300 W 6th Street, Suite 2250
Austin, Texas 78701
Telephone: (512) 647-1900


Attorney for Defendant
HUMAN POWER OF N COMPANY (F/K/A
NEOGENIS LABS, INC.)

<u>**CERTIFICATE OF CONFERENCE**</u>

On Tuesday, September 21, 2021, at 3:30 pm Central time, I, along with my colleagues Robert Rouder (counsel of record) and Andre Hanson (an attorney in my office who is not counsel of record) conferred telephonically with counsel for Plaintiff, including Ryan Higgins, Daniel Dutko, and Tori Reilly, regarding HumanN's view of deficiencies in Plaintiff's Amended Complaint, including the grounds for this motion to dismiss. Plaintiff's counsel disagreed that the amended pleading is deficient or susceptible to a motion to dismiss, and agreed that motion practice, rather than further conferences between counsel, was appropriate.

/s/  *Saul Perloff*
Saul Perloff

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 15, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

/s/ *Saul Perloff*
Saul Perloff