United States District Court
Southern District of Texas
**ENTERED**
August 02, 2022
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| ABDEE SHARIFAN on behalf of himself and for all others similarly situated, | § § § § | |
| Plaintiff. | § § | CIVIL ACTION NO. 4:21-cv-01940 |
| VS. | § § | |
| NEOGENIS LABS, INC. D/B/A HUMANN, | § § § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Before me is Defendant's Motion to Dismiss Plaintiff's First Amended Complaint. *See* Dkt. 11. After considering the motion, the parties' briefing, oral argument, and the applicable law, I recommend the motion be **GRANTED**.

### INTRODUCTION

Defendant Human Power of N Company ("HumanN"), formerly known as NeoGenis Labs, Inc., markets functional foods and dietary supplements that incorporate beetroot power and other ingredients under the brand name "SuperBeets®." HumanN's product line includes its original SuperBeets Powder—containing beetroot and fermented beetroot powder that is mixed with water—and SuperBeets Soft Chews, a dietary supplement containing beetroot powder and grape seed extract in a chewable form.

In June 2021, Plaintiff Abdee Sharifan ("Sharifan") sued HumanN, on behalf of himself and other similarly situated individuals, for violations of the Texas Deceptive Trade Practices Act ("DTPA") and common-law fraud. The general thrust of Sharifan's lawsuit is that HumanN falsely and deceptively marketed its Soft Chews as if they contained the same formula as its SuperBeets Powder. More specifically, Sharifan alleges HumanN advertised that its "Soft Chews had the exact

same health benefits as the original Super[B]eets products" and that "[t]his advertising convinced [him] to purchase the Super[B]eets Soft Chews." Dkt. 7 at 9. In support of his claims that HumanN deceptively marketed its Soft Chews, Sharifan's Amended Complaint includes images of HumanN's purportedly misleading advertisements and social media posts.

HumanN has moved to dismiss Sharifan's Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). HumanN's chief argument is that the advertisements or communications Sharifan cites in his Amended Complaint objectively demonstrate that no reasonable consumer would believe its Soft Chews "contained the exact same formula and ingredients" as its SuperBeets Powder. *See* Dkt. 11 at 9–10. Subsumed within this argument is HumanN's claim that Sharifan's pleadings fail to satisfy Rule 9(b)'s heightened pleading standard for claims grounded in fraud. HumanN also argues Sharifan has failed to allege facts that demonstrate his reliance on HumanN's alleged misrepresentations was reasonable—an essential element for both DTPA and fraud claims. *See id.* at 13–14.

In response, Sharifan argues that he is not required to identify the specific advertisement(s) he relied upon or articulate exactly when or where he saw the advertisement(s) to survive the motion-to-dismiss stage. Rather, under Rule 12(b)(6)'s deferential standard, Sharifan maintains it is sufficient that he has alleged that "HumanN launched an extensive television and print advertising campaign in which HumanN marketed the Super[B]eets Soft Chews as containing the same formula as Super[B]eets [Powder]" and that he relied on those advertisements. Dkt. 19 at 11. But even if he were required to specify the advertisements upon which he relied, Sharifan insists that he has done so. *See id.* at 13.

### SHARIFAN'S OPERATIVE PLEADINGS

To contextualize my decision, it is important to understand how Sharifan has framed his Amended Complaint. Sharifan essentially divides his allegations

into three parts. He begins by describing, generally, HumanN's development of its SuperBeets products. *See* Dkt. 7 at 4–6. The second section concerns HumanN's marketing campaign for its new product line, which includes Soft Chews, and its purported misrepresentations about those products. *See id.* at 6–9. Finally, in the third section, Sharifan cursorily explains how HumanN supposedly duped him into purchasing its Soft Chews. *See id.* at 9–10.

## A.   HUMANN'S PRODUCT DEVELOPMENT

According to Sharifan, HumanN was at the forefront of the "beet root juice" movement, beginning in 2009. *See id.* at 4. More specifically, Sharifan claims HumanN "develop[ed] a specific fermentation process which allowed the use of [beets] to deliver HumanN's patented composition of matter containing both nitrite and nitrate to deliver nitric oxide." *Id.* Enhanced nitric oxide production, Sharifan argues, can decrease muscle soreness, boost exercise performance, and lower blood pressure. *See id.* at 5.

In 2013, HumanN launched Beet Elite, which targeted the "sports performance market." *Id.* After achieving some success, HumanN then developed its SuperBeets Powder—which Sharifan intermittently refers to as the "original" SuperBeets or simply "SuperBeets"—a product intended for the general public.[1] To promote its SuperBeets Powder, Sharifan claims that HumanN "heavily marketed the fact that Super[B]eets used a special fermentation process to preserve nitric oxide activity." *Id.*

At some unspecified time thereafter, HumanN got into a royalty dispute with the University of Texas Health Science Center over a licensing agreement concerning Beet Elite and SuperBeets Powder.[2] *See id.* at 5–6. To avoid paying

---

[1] SuperBeets Powder is simply a one-half dose of Beet Elite. *See* Dkt. 7 at 5.

[2] Though not clearly articulated, it appears that HumanN initially teamed up with Nathan Bryan, a faculty member at the University of Texas Health Science Center at Houston, to develop its original product line (i.e., Beet Elite and SuperBeets Powder). *See* Dkt. 7 at 4 ("HumanN was started in 2009 based on Nathan Bryan's patented nitric oxide technology licensed out of the University of Texas Health Science Center at Houston.").

royalties, Sharifan claims that HumanN launched a new product line "that did not contain [S]uper[B]eets or the patented nitric oxide technology." *Id*. at 6. This new product line included SuperBeets Soft Chews. *See id*.

### B.   HUMANN'S ADVERTISING CAMPAIGN FOR ITS SOFT CHEWS

According to Sharifan, HumanN named and marketed its new products "as if they contained the exact same formula as the original Super[B]eets [Powder]" and "enhanced nitric oxide" production. *Id*. Immediately following this allegation, Sharifan includes examples of HumanN's supposedly misleading advertisements and social media posts. But, as explained below, the advertisements and posts severely undermine Sharifan's allegations.

Beginning with the advertisements, Sharifan uses an apples-to-oranges comparison, juxtaposing an advertisement for the Original SuperBeets Crystals (i.e., SuperBeets Powder) next to an advertisement announcing HumanN's rebranding of its Soft Chews as "Heart Chews":[3]

 

*Id*. at 7. To the left is the advertisement for SuperBeets Powder, while the rebranding advertisement is to the right. Sharifan asserts that "HumanN markets the new products as if they contained the exact same [S]uper[B]eets and used the exact same nitric oxide boosting formula as the original Super[B]eets." *Id*. at 6. Below is an enlarged image of the latter:

---

[3] In February 2021, HumanN rebranded its Soft Chews as Heart Chews. *See* Dkt. 11 at 28 n.7. For purposes of consistency, I use "Soft Chews" throughout.




*Id.* at 7.

When viewed in isolation, it's plain as day that the tagline "New Look, Same Amazing Benefits" does not so much as hint that HumanN claimed its Soft Chews offered the same benefits as its SuperBeets Powder.[4] *See id.* Rather, the advertisement only proves that HumanN promoted its Heart Chews as having the

---

[4] In his response to HumanN's Motion to Dismiss, Sharifan elaborates on why he chose to place the Soft Chews advertisement next to an advertisement for SuperBeets Powder, explaining that he did so because the packaging is "virtually identical." Dkt. 19 at 17 ("Both products have the same names, both use the same fonts, and both use the same picture of beets. The only difference is that the [Soft Chews] appear[] to be the chewable version.").

"Same Amazing Benefits" as its Soft Chews. Moreover, the Soft Chew's packaging's left-hand corner prominently advertises its "Clinically Researched Grape Seed Extract," an ingredient not found in SuperBeets Powder. *See id.*

As for the social media posts—both of which are not dated—the first is from an unidentified platform (presumably Facebook) where someone operating HumanN's social media account wrote:



*Id.* Even the most generous reading of this post does not imply that the two products "are identical." *See id.* ("HumanN tells consumers these new products are identical to the original Super[B]eets formula."). Instead, as demonstrated by the products' nutrition labels—which I discuss momentarily—the statement that both products contain beetroot powder is not misleading.

Immediately following the message discussed above, Sharifan doubles down, alleging that HumanN used its official Facebook page to tell consumers that its "new products contain the **exact same formula** as the original Super[B]eets." *Id.* (emphasis added). Sharifan accompanies this allegation with an image of a conversation over Facebook messenger that reads:



*Id.* at 8.

The person operating HumanN's Facebook account then sent images of the products' respective nutrition labels:



*See id.* The top two nutrition labels are for SuperBeets Powder (original and black cherry flavor), while the bottom nutrition label is for SuperBeets Soft Chews. Because the ingredient lists are likely indecipherable, I've included a breakdown below:

| Product | Ingredients |
|---|---|
| SuperBeets Powder | Non-GMO Beetroot Powder, Non-GMO Beetroot Powder (fermented), Natural Apple Flavor (or Natural Black Cherry Flavor), Malic Acid, Magnesium Ascorbate, Stevia Leaf Extract |
| SuperBeets Soft Chews | Beet Root Powder, Enovita Grape Seed Extract (*Vitis vinifera*), Tapioca Syrup, Raw Cane Sugar, Rice Bran, Natural Flavors, Sunflower Lecithin, Sunflower Oil, Malic Acid, Glycerin, Citric Acid, Rebaudioside A (*Stevia rebaudiana Leaf*) |

8

As you can see, both products include beetroot powder, and the nutrition labels plainly demonstrate that the products *do not* contain "the exact same formula" and ingredients. *Id.* at 7.

## C.   SHARIFAN'S RELIANCE ON HUMANN'S ADVERTISEMENTS

According to Sharifan, "[f]or years . . . [he] saw HumanN's advertising for its [S]uper[B]eets [Powder]," but "it was not until HumanN began heavily advertising Super[B]eets Soft Chews in 2020 that [he] actually began purchasing HumanN's products." *Id.* at 9. Specifically, advertisements claiming that HumanN's "Soft Chews had the **exact same health benefits**" and "contained the **exact same formula and ingredients** as the original [S]uper[B]eets products" "convinced Sharifan to purchase the Super[B]eets Soft Chews . . . . in late 2020 and early 2021."[5] *Id.* at 9–10. *See also id.* at 9 ("This advertising convinced Sharifan to purchase the Super[B]eets Soft Chews because they contain nitric oxide.").

Sharifan concludes that he "would not have purchased the Super[B]eets Soft Chews if he had known the product did not contain the original [S]uper[B]eets formula or did not contain nitric oxide."[6] *Id.* at 10.

---

[5] Sharifan also alleges that he "ordered the nitric oxide testing strips sold by HumanN because he was purposefully misled to believe that Super[B]eets Soft Chews contained nitric oxide." Dkt. 7 at 10. Tellingly, however, he does not claim that he used the testing strips on himself, nor does he mention the results of any such test. *See id.* Although this ultimately does not factor into my decision, one would assume Sharifan would highlight the test results if they furthered his claim that the Soft Chews contain a knockoff beetroot powder. *See, e.g.*, *id.* at 6 ("HumanN's new products used a cheap beet that did not contain any detectable amounts of nitrite or nitrate. . . . HumanN even falsely claimed these new products 'activate nitric oxide' when they actually contain no nitric oxide and do not activate nitric oxide.").

[6] As an aside, neither product *contains* nitric oxide. Rather, beets are high in nitrates that your body converts into nitric oxide. This discrepancy persists throughout Sharifan's briefing. *See, e.g.*, Dkt. 7 at 9 ("This advertising convinced Sharifan to purchase Super[B]eets Soft Chews because they contain nitric oxide."); Dkt. 19 at 14 ("If Super[B]eets Soft Chews contained the same beetroot powder that Super[B]eets [Powder] has, then why does only Super[B]eets [Powder] have nitric oxide?").

## LEGAL STANDARD

### A.   RULE 12(b)(6)

Rule 12(b)(6) allows for the dismissal of a complaint for the "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In deciding a Rule 12(b)(6) motion, I must "accept all well-pleaded facts as true, drawing all reasonable inferences in the nonmoving party's favor." *Benfield v. Magee*, 945 F.3d 333, 336 (5th Cir. 2019). I "do not, however, accept as true legal conclusions, conclusory statements, or naked assertions devoid of further factual enhancement." *Id*. at 336–37 (cleaned up). Because a complaint must be liberally construed in favor of the plaintiff, a motion to dismiss under Rule 12(b)(6) is generally viewed with disfavor and is rarely granted. *See Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009).

### B.   RULE 9(b)'S HEIGHTENED PLEADING STANDARD

When a plaintiff's claims are grounded in fraud, the plaintiff must satisfy the heightened pleading requirements of Rule 9(b), which provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). This heightened pleading standard applies to the fraud and DTPA claims Sharifan asserts in this case. *See SHS Inv. v. Nationwide Mut. Ins. Co.*, 798 F. Supp. 2d 811, 815 (S.D. Tex. 2011) ("causes of action arising under DTPA . . . or common law fraud must satisfy Rule 9(b)").

Rule 9(b)'s particularity requirement generally demands the complaint identify the "who, what, when, where, and how" of the allegedly fraudulent content. *See United States ex rel. Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) ("At a minimum, this requires that a plaintiff set forth the who, what, when, where, and how of the alleged fraud." (cleaned up)). That is, a plaintiff pleading fraud must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002) (quotations omitted). *See Bennett v. Lindsey (In re Lindsey*, 733 F. App'x 190, 192 (5th Cir. 2018) ("At a minimum, these rules require that a plaintiff allege the nature of the fraud, some details, a brief sketch of how the fraudulent scheme operated, when and where it occurred, and the participants." (quotation omitted)).

"What constitutes particularity will necessarily differ with the facts of each case." *Afshani v. Spirit SPE Portfolio 2006-1, L.L.C.*, No. 21-10137, 2022 WL 964201, at *3 (5th Cir. Mar. 30, 2022) (quotation omitted). Nonetheless, Rule 9(b) sets a "high bar." *Colonial Oaks Assisted Living Lafayette, L.L.C. v. Hannie Dev., Inc.*, 972 F.3d 684, 694 (5th Cir. 2020). Naked assertions devoid of further factual enhancement will not suffice. *See In re Lindsey*, 733 F. App'x at 192.

## DISCUSSION

### A.  SHARIFAN'S AMENDED COMPLAINT FAILS TO SATISFY RULE 9(b)'S HEIGHTENED PLEADING STANDARD

This case turns on Rule 9(b)'s *what*, *when*, *how*, and—to a lesser extent—*where* elements. Before jumping into my analysis, below is a quick recap of why Sharifan alleges he purchased Soft Chews:

- "For years[,] Sharifan saw HumanN's advertising for its [S]uper[B]eets products including the original Super[B]eets with nitric oxide";

- "[I]t was not until HumanN began heavily advertising Super[B]eets Soft Chews in 2020 that Sharifan actually began purchasing HumanN products";

- "HumanN's advertising of Super[B]eets Soft Chews claimed the Soft Chews had the exact same health benefits as the original Super[B]eets products";

- "This advertising convinced Sharifan to purchase the Super[B]eets Soft Chews because they contain nitric oxide";

- "Sharifan purchased Super[B]eets Soft Chews believing the product contained nitric oxide because of the advertising of HumanN claiming the Super[B]eets Soft Chews contained the exact same formula and ingredients as the original [S]uper[B]eets products, including nitric oxide"; and

- "Sharifan would not have purchased Super[B]eets Soft Chews if he had known the product did not contain the original [S]uper[B]eets formula or did not contain nitric oxide."

Dkt. 7 at 9–10. Notably missing is any mention of the representation(s) that convinced Sherifan to purchase Soft Chews. Nor does Sharifan claim he relied upon the example advertisements or social media posts included in his Amended Complaint.

HumanN contends that Sharifan's allegations do not contain nearly all the requisite detail required under Rule 9(b). *See* Dkt. 11 at 25–26. Sharifan's response is a bit disjointed, but he principally argues that he is not "required to identify the specific advertisements he relied on and articulate exactly when he saw the advertisements." Dkt. 19 at 5. Instead, he maintains that his Amended Complaint sufficiently describes how "HumanN launched an extensive television and print advertising campaign in which HumanN marketed the Super[B]eets Soft Chews as containing the same formulation as Super[B]eets [Powder]," which convinced him to purchase the Soft Chews. *Id.* at 11 (citing Dkt. 7, ¶¶ 23–24).

To begin, the term "advertising campaign" is nowhere to be found in Sharifan's Amended Complaint, though it repeatedly appears in his response to the Motion to Dismiss. Nonetheless, I have scoured Sharifan's Amended Complaint.

When it comes to allegations concerning any type of advertisement for HumanN's "new products," Sharifan alleges as follows:

- After a royalty dispute concerning SuperBeets Powder, "HumanN created a new line of 'Super[B]eet' products that did not contain [S]uper[B]eets or the patented nitric oxide technology";

- "Despite the fact that these new products did not contain [S]uper[B]eets and did not enhance nitric oxide in the body, they were named and marketed as if they contained Super[B]eets and as if they enhanced nitric oxide";

- "HumanN named these [new] products, and then marketed these [new] products, as if they contained the exact same formula a[s] the original Super[B]eets";

- "HumanN's new products used a cheap beet that did not contain any detectable amounts of nitrite or nitrate";

- "HumanN knew these products do not contain Super[B]eets and do not have any detectable amounts of nitrite or nitrate";

- "Despite knowing this, HumanN marketed these products as if they contained Super[B]eets and improved nitric oxide production once consumed"; and

- "HumanN even falsely claimed these new products 'activate nitric oxide' when they actually contain no nitric oxide and do not activate nitric oxide."

Dkt. 7 at 6.

Cutting to the chase, Sharifan's vague mention of a nebulous advertising campaign is of such a high level of generality that it fails to provide even the most minimal context so that HumanN can identify the advertisement(s) at issue and prepare its defense accordingly.[7] Indeed, the only mention of when the advertising

---

[7] *See, e.g.*, *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125–26 (9th Cir. 2009) (dismissing fraud claim under Rule 9(b) where plaintiff did not specify what the advertisements stated, when he was exposed to the allegedly misleading advertisements, or which advertisements he found material); *Douglas v. Renola Equity Fund II, LLC*, No. CIV.A. 13-6192, 2014 WL 1050851, at *6 (E.D. La. Mar. 14, 2014) (finding allegation that defendant "utilized television and print advertisements to communicate misrepresentations" failed to satisfy Rule 9(b) because it did not "state when the advertisements appeared . . ., the frequency with which they ran, or what specifically was

campaign took place is sometime "in 2020." *Id.* at 9 ("it was not until HumanN began heavily advertising Super[B]eets Soft Chews in 2020 that Sharifan actually began purchasing HumanN's products"). More importantly, Sharifan's sweeping, generalized allegations that HumanN effectively marketed its Soft Chews as if they were identical to its SuperBeets Powder offer no particularity about the contents of the false representations. Further, despite harping on the phrase "television and print advertising campaign" in his response to HumanN's Motion to Dismiss, Sharifan's Amended Complaint never mentions the medium in which the advertisements appeared (e.g., television, print, internet, radio, etc.),[8] nor does it provide any details concerning the extent or frequency of circulation among consumers.

Those issues aside, the advertisements and social media posts Sharifan has included in his Amended Complaint belie the allegations that accompany them. If anything, they prove the opposite. Indeed, Sharifan's claim that HumanN's social

---

said"); *R & L Inv. Prop., LLC v. Hamm*, No. 3:10-CV-00864-M, 2011 WL 2462102, at *4 (N.D. Tex. June 21, 2011) (dismissing claim that defendants marketed a property as having a waste-water treatment permit because the plaintiff "fail[ed] to specify who made the advertisement, when, and where"); *Ryan v. Brookdale Int'l Sys., Inc.*, No. CIV.A. H-06-01819, 2007 WL 3283655, at *7 (S.D. Tex. Nov. 6, 2007) ("Without knowing when an advertisement ran, much less where it was seen or heard, a defendant may have little ability to identify the particular advertisement and prepare its defense. Because [plaintiff] failed to indicate when he observed the allegedly fraudulent statements with a level of specificity that would provide notice to defendants, he fails to meet the requirements of Rule 9(b)."); *Johnson v. Metabolife Int'l, Inc.*, No. CIV.A.3:01-CV-2082-G, 2002 WL 32494514, at *3 (N.D. Tex. Oct. 23, 2002) ("[Plaintiff's] repled deceit and fraud claim identifies neither the time nor the place of these alleged misrepresentations. . . . Nor does she allege the specific contents, context, or speaker of these advertisements. [Plaintiff] has also failed to present any facts to support an inference of [defendant's] alleged fraudulent intent. Finally, [plaintiff] does not adequately show how any alleged statements on behalf of [defendant] were actually fraudulent. Thus, the deceit and fraud claim . . . lacks sufficient particularity to comply with Rule 9(b).").

[8] It's safe to assume the social media posts are from the internet. But the Amended Complaint's only mention of a television advertisement concerns an infomercial for SuperBeets Powder. *See* Dkt. 7 at 5 ("Super[B]eets [Powder] gained popularity . . . . HumanN even filmed an infomercial describing the nitric oxide activity of beets and how these performance enhancing vegetables could increase nitric oxide production.").

media posts "tell[] consumers these new products are identical to the original Super[B]eets formula" is demonstrably false and confuted by the posts themselves. *See id.* at 7–8. What's more, the respective products' nutrition labels prove beyond doubt that the Soft Chews do not "contain[] the exact same formula and ingredients as the original [S]uper[B]eets [Powder]." *Id.* at 10. Perplexingly, Sharifan even acknowledges that the products contain different ingredients, though he tries his best to downplay this unfortunate fact. *See* Dkt. 19 at 18 ("Other than a few minor additional ingredients in the chews, the only difference between the two is that one is a powder, and one is chewable.").

As for the side-by-side advertisements, Sharifan changes his tune in response to the Motion to Dismiss. Instead of arguing that "HumanN markets [Soft Chews] as if they contained the exact same [S]uper[B]eets and used the exact same nitric oxide boosting formula," Dkt. 7 at 6, Sharifan now insists the two products' packages are indiscernible:

> HumanN claims that consumers should simply know that the heavily advertised [SuperBeets Powder] contains completely different nutritional qualities than the nearly identically packaged [Soft Chews]. They are virtually identical. Both products have the same names, both use the same fonts, and both use the same picture of beets. The only difference is that the [Soft Chews] appear[] to be the chewable version of the [SuperBeets Powder].

Dkt. 19 at 17.

Put bluntly—*yes*, anyone exercising a modicum of discretion would realize the two products contain different ingredients. *Cf. Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304, 312 (S.D.N.Y. 2017) ("Assuming that a reasonable consumer might ignore the evidence plainly before him attributes to consumers a level of stupidity that the Court cannot countenance." (quotation omitted)), *aff'd sub nom. Kommer v. Bayer Consumer Health*, 710 F. App'x 43 (2d Cir. 2018).

More importantly, Sharifan's after-the-fact explanation does not somehow cure the fact that Sharifan does not allege *he* was duped by the products' packaging.[9]

While I agree that the products' packaging is somewhat similar, it is not so similar that a consumer would confuse the two products. As explained above, the products' ingredients are listed prominently on the back of their packaging. Further, the Soft Chews' packaging conspicuously advertises it contains "Clinically Researched Grape Seed Extract" and promotes: (1) normal blood pressure; (2) heart-healthy energy; and (3) blood flow. *See* Dkt. 7 at 7.[10] Nowhere on the SuperBeets Powder package does it make any of these claims.[11] *See id.*

Given that Sharifan accuses HumanN of repeatedly misleading consumers with claims that its Soft Chews are, for all intents and purposes, identical to its SuperBeets Powder, it is difficult to fathom why he is not able to come forward with more detailed facts.[12] It is not as if the facts relating to the purported fraud are

---

[9] "The Fifth Circuit . . . and other district courts within this circuit have either held or strongly suggested that Rule 9(b)'s particularity requirement extends to allegations of actual reliance." *In re BP P.L.C. Sec. Litig.*, No. 4:12-CV-1256, 2013 WL 6383968, at \*39 (S.D. Tex. Dec. 5, 2013) (collecting cases). In other words, to surmount the hurdle of Rule 9(b), a plaintiff must "describe the circumstances of [his] reliance with particularity." *Id.* (cleaned up).

[10] Sharifan includes a higher quality image of the Soft Chews' packaging in his response. *See* Dkt. 19 at 17.

[11] The *advertisement* for SuperBeets Powder Sharifan juxtaposed next to the Soft Chews' advertisement does claim that one serving "helps promote": (1) nitric oxide production; (2) improved natural energy and stamina; (3) healthy circulation; and (4) healthy blood levels. *See* Dkt. 7 at 7. But even when generously comparing the Soft Chew's *packaging* with this unrelated *advertisement*, the two products objectively do not claim to offer "the exact same health benefits." *Id.*

[12] Admittedly, there is caselaw outside this circuit that holds where a plaintiff alleges a years-long fraudulent scheme, he need only plead representative examples and need not detail each individual representation. *See Goldberg v. Rush Univ. Med. Ctr.*, 929 F. Supp. 2d 807, 819 (N.D. Ill. 2013) ("A plaintiff who pleads a fraudulent scheme involving numerous transactions over a period of years need not plead specifics with respect to every instance of fraud, but he must at least provide representative examples." (quotation omitted)). But Sharifan has not even pleaded representative examples. As amply explained, the advertisements and social media posts are not misleading. What's misleading is Sharifan's description of them.

peculiarly within the opposing party's knowledge; this case centers around public statements made as part of an "extensive" advertising campaign. *Cf. U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 385 (5th Cir. 2003) ("the pleading requirements of Rule 9(b) may be to some extent relaxed where, as is arguably the case here, the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge").

While I "must accept all well-pleaded factual allegations as true for the purpose of a motion to dismiss, conclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint." *Carter v. Target Corp.*, 541 F. App'x 413, 417 (5th Cir. 2013) (cleaned up). Here, Sharifan's allegations are contradicted by the very advertisements and social media posts upon which he attempts to build his house of cards. *See* Dkt. 19 at 13.

But even if I were to buy Sharifan's argument that his laconic—not to mention vague—discussion of HumanN's advertising campaign satisfied Rule 9(b)'s *who*, *what*, *where*, and *how* elements, Sharifan's claims still fail as he does not identify *when* the fraudulent statements were made. Stated differently, Sharifan is unable to point to a single advertisement or social media post supporting his claim that HumanN's Soft Chews contained the same formula as its SuperBeets Powder.

On this point, Sharifan insists that he is not required to identify the specific advertisements he relied on when he decided to purchase the Soft Chews and that his nebulous mention of HumanN's "television and print advertising campaign" is enough to survive the motion-to-dismiss stage. *See* Dkt. 19 at 11. Sharifan's argument principally relies on a recent case out of the Corpus Christi Division— *Click v. General Motors LLC*, No. 2:18-CV-455, 2020 WL 3118577 (S.D. Tex. Mar. 27, 2020).

In *Click*, a group of plaintiffs sued General Motors LLC ("GM"), alleging GM "intentionally concealed and suppressed material facts related to defective CP4

fuel injection pumps installed in [their] diesel-tank trucks." *Id.* at *1. Regarding the alleged fraud, the plaintiffs' live pleadings cited to GM advertisements, press releases, and brochures in which GM claimed that its diesel trucks had increased fuel efficiency, "proven durability," and an "advanced" diesel engine. *Id.* at *4. None of the advertisements, however, mentioned that the vehicles were incompatible with American diesel fuel. *See id.* Regarding Rule 9(b)'s *who*, *what*, and *where* elements, the district court found it sufficient that the plaintiffs identified "*specific GM publications*—which contradict[ed] or omit[ted] information known to the company—on which [they] base[d] their claims." *Id.* at *5 (emphasis added).

Next, the district court found the allegations that the plaintiffs "saw GM's advertisements in the weeks and months prior to their purchases" and "relied on these statements when they purchased their trucks," coupled with the "pleadings['] *reference [to] specific advertisements, press releases, and brochures issued by GM*" satisfied Rule 9(b)'s *when* element. *Id.* at *6 (emphasis added). Quoting a case out of the Central District of California, the *Click* court went on to write: "Thus, Defendant's argument that Plaintiff must demonstrate which particular advertisement induced him to purchase the [vehicle] is premature at the pleading stage." *Id.* (quoting *True v. Am. Honda Motor Co.*, 520 F. Supp. 2d 1175, 1183 (C.D. Cal. 2007)).

Sharifan seizes on the above-quoted language, arguing that he, too, is not required to identify the particular advertisement(s) upon which he relied to survive the motion-to-dismiss stage. But Sharifan's strident attempt to bend the facts of this case to fit *Click*'s reasoning is an unfortunate elevation of rhetoric over reason.

By my count, the *Click* plaintiffs' live pleadings cited 13 different advertisements or publications in which GM made material, affirmative representations about its vehicles' performance or quality. *See* Case No. 2:18-CV-00455, Docket Entry No. 9 at 53–60. For example, one brochure referred to the diesel engine as "[t]he crown jewel of the heavy-duty realm," claiming it generated

"more maximum horsepower and torque than ever before," improved "highway fuel economy by more than 11%," and offered "up to 680 highway miles on a single tank." *Id.* at 55. The plaintiffs further claimed that they relied on GM's false representations or omissions (e.g., that its diesel engine was compatible with American diesel fuel, durable, or reliable) when purchasing their vehicles and would not have done so absent GM's representations or omissions.

On *that* record, the *Click* court found it was not necessary for each plaintiff to identify the particular advertisement on which he or she relied at the pleading stage. Rather, the pleadings' reference to "specific advertisements, press releases, and brochures"—any one of which was arguably misleading—coupled with a general averment that the plaintiffs relied on those or similar statements within "the weeks and months prior to their purchases." *Click*, 2020 WL 3118577, at *6. In other words, those pleadings gave GM "fair notice of the plaintiffs' claims," *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994), such that it could "prepare an effective response and defense." *Campbell v. Tex. Tea Reclamation, LLC*, No. 3:20-CV-00090, 2021 WL 2211690, at *2 (S.D. Tex. May 6, 2021) (quotation omitted).

Comparing the pleadings in *Click* to those in this case is like comparing Monet to a child's finger paintings. While Sharifan may be correct that he need not allege which particular advertisement induced him to purchase the Soft Chews at the pleading stage, he cannot simply refer to an amorphous advertising campaign and then claim that an unspecified advertisement—which he viewed at an unspecified time—convinced him to purchase the Soft Chews. *See generally Corbett v. Pharmacare U.S., Inc.*, 544 F. Supp. 3d 996, 1007 (S.D. Cal. 2021) ("Plaintiffs only allege when they purchased Defendant's Products but fail to specify when they saw and relied on the alleged misrepresentations or misleading advertisements or labeling. Plaintiffs must identify a time period when they saw the false advertisements."). Otherwise, any plaintiff could file a lawsuit alleging the most outlandish fraud claim, vaguely reference indeterminate advertisements,

argue the advertisements are misleading and form the basis of said fraud claim—similar to what Sharifan has done in this case—and survive the motion-to-dismiss stage. This flies in the face of Rule 9(b)'s heightened pleading requirement. *See Garlough v. FCA US LLC*, No. 2:20-CV-01879-JAM-AC, 2021 WL 1534205, at *6 (E.D. Cal. Apr. 19, 2021) (dismissing fraud-based claim where plaintiff did not "specify what advertisements he saw, when or where he saw them, what specific representations were made in them or how the[] representations were false").

Moreover, a fraud-based claim is all but eviscerated when the plaintiff's complaint supplies examples of the supposed misrepresentations (e.g., advertisements), and those examples flat out contradict the complaint's allegations of fraud. *See, e.g.*, *Microsoft Corp. v. My Choice Software, LLC*, No. C18-608 RAJ, 2018 WL 9662626, at *8 (W.D. Wash. Sept. 28, 2018) (dismissing false-advertising claims brought under the Lanham Act where the advertisements cited in the complaint directly contradicted allegations in the complaint). *See also GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384–85 (10th Cir. 1997) (explaining that while the court must generally accept all well-pleaded factual allegations as true, the court need not accept factual allegations belied by documents properly considered under Rule 12(b)(6)); *Cicalese v. Univ. of Tex. Med. Branch*, 456 F. Supp. 3d 859, 866 (S.D. Tex. 2020) ("[A] court is not required to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions.").

Without belaboring the point, for the reasons discussed above, Sharifan's Amended Complaint falls well short of Rule 9(b)'s heightened pleading requirement.

## B.   LEAVE TO AMEND

Sharifan concludes his response to the motion to dismiss with a cursory request for leave to amend his pleadings pursuant to Rule 15(a)(2). Although district courts "should freely give leave [to amend] when justice so requires," FED. R. CIV. P. 15(a)(2), leave to amend is by no means automatic. *See Avatar Expl., Inc.*

*v. Chevron, U.S.A., Inc.*, 933 F.2d 314, 320 (5th Cir. 1991). As the Fifth Circuit has explained on numerous occasions, the ultimate decision to grant or deny a motion to amend rests within the sound discretion of the trial judge. *See id.* When exercising its discretion to allow or deny leave to amend, the district court can consider a number of factors, such as "the futility of amending, the party's repeated failure to cure deficiencies by previous amendments, undue delay, or bad faith." *United States ex rel. Marcy v. Rowan Cos.*, 520 F.3d 384, 392 (5th Cir. 2008). While the language of Rule 15(a)(2) evinces a bias in favor of granting leave to amend, a district court need not grant a futile motion to amend. *See Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir. 2016).

Shortly after the lawsuit was filed, defense counsel met with Sharifan's counsel to discuss alleged deficiencies in Plaintiff's Original Class Action Complaint. *See* Dkt. 6 at 1. "While not agreeing that there [we]re deficiencies in the initial Complaint as pled, counsel for Plaintiff stated that Plaintiff [would] file an amended Complaint." *Id.* Sharifan filed the First Amended Complaint on September 10, 2021. *See* Dkt. 7. Then, in accordance with the Court's procedures, HumanN filed a pre-motion letter, requesting the opportunity to file a motion to dismiss. *See* Dkt. 8. I held a pre-motion hearing at which time, according to my minute entry from those proceedings, Sharifan's counsel "stated that he did not need to amend the complaint further." Min. Entry dated Oct. 5, 2021. I am a tad surprised that Sharifan's counsel is now claiming that Sharifan should be permitted to amend his complaint yet again.

Sharifan provides absolutely no basis or detail for the requested amendment. In an ideal world, Sharifan would have provided me with a proposed amended complaint to review. Nonetheless, his "failure to attach a copy of the proposed complaint is not, on its own, fatal to a motion to amend." *Peña v. City of Rio Grande City*, 879 F.3d 613, 618 (5th Cir. 2018). What does, however, doom Sharifan's request to amend is his failure to apprise me of what additional facts he would include in a Second Amended Complaint. "[A] bare bones motion to amend

remains futile when it fails to apprise the district court of the facts that he would plead in an amended complaint." *Edionwe v. Bailey*, 860 F.3d 287, 295 (5th Cir. 2017) (cleaned up). Because Sharifan has failed to explain what facts would be included in yet another amended pleading, his latest request to amend should be denied as futile. *See Rombough v. Bailey*, 733 F. App'x 160, 165 (5th Cir. 2018) ("[Plaintiff] failed to apprise the court of the facts she would plead in her amended complaint; therefore the district court did not err when it denied her motion to amend as futile.").

## CONCLUSION

For the above reasons, I recommend that the Court **GRANT** HumanN's Motion to Dismiss (Dkt. 11) and **DISMISS** Sharifan's claims with prejudice to refiling.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have 14 days from the receipt to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

Signed on this 2nd day of August 2022.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

22